14 Civ. 7744 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN VINCENT and LORENZO SERNA ,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al,

Defendants

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel Dara L. Weiss*
*Tel: (212) 356-3517*

**Cases**

Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) ................................................................ 8, 18, 19

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)................................................................................ 3,4

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)......................................................................... 11, 18

Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107 (2d Cir. 2004) ..................... 18

Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007)........................................................ 3, 17

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ..................................................................... 5

Bohm v. Holzberg, 365 N.Y.S.2d 262 (App. Div. 1975) .............................................................. 18

Boley v. Durets, 2013 U.S. Dist. LEXIS 177862 (E.D.N.Y. Dec. 10, 2013) ................................. 9

Brass v. Am. Film Techs., Inc., 987 F.2d 142 (2d Cir. 1993) ........................................................ 4

Burnette v. Carothers, 192 F.3d 52 (2d Cir. 1999) ....................................................................... 3

Cadwallader v. Devlin, 2016 U.S. Dist. LEXIS 1409 (N.D.N.Y Jan. 7, 2016)............................ 11

Caravalho v. City of New York, 13 CV 4174 (PKC) ................................................................. 5, 15

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ..................................................................... 7

Davis v. United States, 2004 U.S. Dist. LEXIS 2551 (S.D.N.Y. 2004) ......................................... 9

De Santis v. City of New York, 2011 U.S. Dist. LEXIS 99126 (S.D.N.Y. 2011) ......................... 17

Deniran v. Mattingly, 2009 U.S. Dist. LEXIS 28888 (S.D.N.Y. Mar. 30, 2009)......................... 25

Escalera v. Lunn, 361 F.3d 737 (2d Cir. 2004)........................................................................... 11

Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010)........................................................................... 7

Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) ............................................................................ 18

Garcia v. Doe, 764 F.3d 170, 191 ......................................................................... 6, 7, 11, 12, 21

Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013)..................................................... 6

Graham v. Connor, 490 U.S. 386, 396 (1989)......................................................................... 9, 10

Guerrero v. City of New York, 2013 U.S. Dist. LEXIS 25476 (S.D.N.Y. Feb. 21, 2013) ............. 9

Guo Hua Ke v. Morton, 2012 U.S. Dist. LEXIS 141848 (S.D.N.Y. Sept. 28, 2012)...................... 9

Hart v. City of New York, No. 11 CV 4678 (RA), 2013 WL 6139648 (S.D.N.Y. Nov. 18, 2013) 5

Hauser v. Bartow, 273 N.Y. 370 (1937) ..................................................................................... 17

Hewitt v. City of New York, 2011 U.S. Dist. LEXIS 11479 (E.D.N.Y. Feb. 7, 2011).................... 8

Hunter v. Bryant, 502 U.S. 224 (1991)....................................................................................... 12

Husbands ex rel. Forde v. City of New York, 335 Fed. Appx. 124 (2d Cir. 2009)..................... 13

In re Elevator Antitrust Litig., 502 F.3d 47 (2d Cir. 2007)........................................................... 3

In re: Beacon Associates Litigation, 745 F.Supp.2d 386 (S.D.N.Y. 2010) ................................... 4

Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. Dec. 6, 2010) ........... 13, 16

Jackson v. County of Rockland, 450 Fed. Appx. 15 (2d Cir. 2011)............................................... 5

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) .............................................................................. 6

Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003) ........................................................................... 4

Kachalsky v. Cacace, 817 F. Supp. 2d 235 (S.D.N.Y. 2011) ...................................................... 25

King v. Am. Airlines, Inc., 284 F.3d 352 (2d Cir. 2002)................................................................ 3

Lopez v. City of New York, 901 F. Supp. 684 (S.D.N.Y. 1995) ................................................... 17

Malley v. Briggs, 475 U.S. 335 (1986)........................................................................................ 12

Marom v. City of New York, 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) ...... 6, 8, 17

Mayzick v. County of Nassau, 32 F. Supp. 3d 399 (E.D.N.Y. 2014)..............................................7

Nogbou v. Mayrose, 2009 U.S. Dist. LEXIS 96118 (S.D.N.Y. Oct. 15, 2009) ...........................9

Phillips v. Girdich, 408 F.3d 124 (2d Cir. 2005) ..........................................................................25

Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31, 2015)........18, 20

Ricciuti v. New York City Transit Auth., 124 F.3d 123 (2d Cir. 1997)......................................21

Richardson v. N.Y. City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247 (S.D.N.Y. 2009)
............................................................................................................................................17

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. Mar. 21, 2005)..............10

Rogoz v. City of Hartford, 796 F.3d 236 (2d Cir. 2015) ............................................................19

Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)..............................................................0

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) .................................................4, 5, 13

Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. 2009) ............................16

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996)
............................................................................................................................................13, 16

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d. Cir.2002).......................................10

Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. Apr. 9, 2013)..........6

Torraco v. Port Authority of New York and New Jersey, 615 F.3d 129 (2d Cir. 2010) ...............6

Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007).......................................................................11

Wood v. Moss, 134 S. Ct. 2056 (2014) .........................................................................................11

Yorzinski v. Imbert, 39 F. Supp. 3d 218 (D. Conn. 2014) .............................................................7

Zahrey v. City of New York, 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. 2009)...........................18

Zalaski v. City of Hartford, 723 F.3d 382 (2d Cir. 2013)...........................................................11

**Statutes**

Fed. R. Civ. P. 8(a) ........................................................................................................................4

PRELIMINARY STATEMENT ............................................................ .1

STATEMENT OF FACTS.................................................................... 2.

STANDARD OF REVIEW ................................................................... 3.

ARGUMENT ....................................................................................... 4

    PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE ARREST ...........4

    PLAINTIFF FAILS TO STATE A CLAIM FOR EXCESSIVE FORCE ..... 8.

    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
    IMMUNITY.................................................................................11

    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST
    AMENDMENT ......................................................................... 13.

    PLAINTIFF FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS.. 16.

    PLAINTIFFS FAIL TO PLAUSIBLY PLEAD PERSONAL
    INVOLVEMENT AGAINST ANY NAMED DEFENDANT ......................... 18

    PLAINTIFF HAS FAILED TO STATE A *MONELL* CLAIM ..................... 19.

    PLANITFF'S CLAIM FOR DEPRIVATION OF FAIR TRIAL RIGHTS
    MUST BE DISMISSED...............................................................24

    THE EQUAL PROTECTION CLAIM SHOULD BE DISMISSED ............. 25

CONCLUSION...............................................................................25

## PRELIMINARY STATEMENT

Defendants City of New York, Michael Bloomberg, Raymond Kelly, Edward Winski, Thomas Traynor, Lisa Waring, John McNamara, Edward Blanco, Wilson Vernelly, William Curley, William Grodnick, Thomas Manning, Carbajal, and Paul Reres by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion to dismiss pursuant to Rule 12(b) & (c) of the Federal Rules of Civil Procedure.[1]

## STATEMENT OF FACTS

On September 24, 2011, plaintiff Sean Vincent was participating in an Occupy Wall Street ("OWS") March. See Complaint, ¶49, attached to the Declaration of Dara L. Weiss as "Exhibit A". Police were present during the march, and while isolated arrests occurred at points along the route, police officers did not attempt to stop the protestors from marching. Id., ¶¶51, 53. As the march progressed, an unidentified woman was placed on the ground by officers. Id., ¶54. Plaintiff, aware of the interaction between this unidentified female and the officers; nonetheless approached the situation and attempted to get the unidentified woman on her feet.  Id., ¶55. Unknown officers attempted to apprehend plaintiff and in the process, plaintiff "backpedaled desperately" in an attempt to avoid bring struck without fighting back. Id., ¶¶56-57. In the process, plaintiff fell over a police barricade. Id., ¶58. These unknown officers repeatedly told plaintiff to stop resisting and plaintiff claims these officers struck him with their fists, feet and batons. Id., ¶¶59-61. Plaintiff was subsequently carried away by an unidentified officer and his arrest was assigned to Officer Edward Blanco. Id., ¶¶62, 65. Plaintiff was charged with harassment, resisting arrest and attempted assault.

---

[1] Plaintiff Lorenzo Serna accepted a Rule 68 Offer of Judgment on October 30, 2015, and as such, all claims brought by him have been dismissed.

Id., ¶62. Plaintiff was in custody for approximately 24 hours and released on his own recognizance. Id., ¶¶63-64.

On October 1, 2011, Plaintiff participated in an OWS march over the Brooklyn Bridge. Id., ¶69. The march proceeded towards the Manhattan entrance to the bridge. Id., ¶73. Members of the NYPD were present and ordered marchers to use the pedestrian walkway of the bridge. Id., ¶74. While some followed police instructions and proceeded to use the pedestrian walkway, others including plaintiff began walking onto the vehicular roadway. Id., ¶¶77-79. Plaintiff and other protestors continued to walk onto the roadway until police asked them to stop. Id., ¶82. Officers informed this group that they would be arrested. Id., ¶84. Plaintiff was arrested on the vehicular roadway of the Brooklyn Bridge and charged with disorderly conduct and a traffic violation. Id.,¶¶86, 91. Plaintiff's charges were dismissed on October 10, 2012.

On October 15, 2011, plaintiff was participating in an OWS march from Washington Square to Time Square, which was escorted by police. Id.,¶¶101-102. Eventually the march split into two groups and began walking on opposite sides of Sixth Avenue. Id., ¶103. Although initially serving as a liaison between police and protestors, at some point plaintiff was arrested. Officers alleged that plaintiff entered the street after orders were given to stay out of the street.   Id., ¶106. Plaintiff was held for several hours and charged with disorderly conduct. Id., ¶107.

On October 26, 2011, plaintiff was participating in an OWS march.  Id., ¶108. While orders were not issued to disperse; officers did issue orders for the marchers to stay on the sidewalk. Id., ¶¶109-110. Eventually marchers split into two groups and plaintiff was arrested. Id., ¶¶110, 112.

On November 8, 2011, plaintiff was told to vacate Zuccotti Park due to a bomb threat. Id., ¶114. Plaintiff claims he was beginning to comply when he was suddenly grabbed, detained and arrested by Officer William Grodnick. Id., ¶116. Plaintiff did not believe that the bomb threat was real. Id., ¶115. There were no other arrests made for failing to obey the officers' orders to vacate the park. Id., ¶121.

On November 27, 2011, plaintiff was present near Zuccotti Park as Inspector Winski was detaining another individual. Id., ¶122. While this individual was being detained, plaintiff approached him, made physical contact and began a conversation with him. Id., ¶¶124-126. Officers attempted to apprehend plaintiff, who responded by stating "why are you in my face?" Id., ¶¶127-128. Plaintiff was subsequently arrested as it was alleged plaintiff repeatedly interfered with the arrest of another individual. Id., ¶¶130,132.

Many of plaintiff's criminal cases were consolidated in one action and on April 4, 2013, plaintiff pled guilty to disorderly conduct. Id., ¶136. Plaintiff was sentenced to time served in satisfaction of the multiple charges against him. Id.

## **STANDARD OF REVIEW**

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the court is to "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." King v. Am. Airlines, Inc., 284 F.3d 352 (2d Cir. 2002) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).

A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." See Twombly, 127 S. Ct. at 1965; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"). A complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949 (2009).

Evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See id. at 1950. The Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 1949. After examining the remaining factual matter, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See id. at 1950 (quoting Fed. R. Civ. P. 8(a)).

"On a motion to dismiss, a court is not limited to the four corners of the complaint; a Court may also consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." In re: Beacon Associates Litigation, 745 F.Supp.2d 386, 402 (S.D.N.Y. 2010)(quotations omitted); citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)(the court may rely upon "documents submitted by the moving party, so long such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings".)

## PLAINTIFF FAILS TO STATE A CLAIM FOR
## FALSE ARREST

A § 1983 claim for false arrest is "substantially the same" as a claim for false arrest under state law. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). In order to state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d

Cir. 2003) (quoting <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994)); <u>see also</u> <u>Hart v. City of</u>
<u>New York</u>, No. 11 CV 4678 (RA), 2013 WL 6139648, at *3 (S.D.N.Y. Nov. 18, 2013).

        The Complaint fails to allege sufficient facts about plaintiff's arrests to survive a
motion to dismiss. Plaintiff must plead facts that would allow the Court to make an inference that he
was *falsely arrested*. "As these assertions lack any factual foundation, they are merely conclusory
allegations 'masquerading as factual conclusions,' which are insufficient to defeat a motion to
dismiss." <u>Jackson v. Cnyt. of Rockland</u>, 450 Fed. Appx. 15, 19 (2d Cir. 2011) (citing <u>Kirch v.</u>
<u>Liberty Media Corp.</u>, 449 F.3d 388, 398 (2d Cir. 2006)) (dismissing § 1983 false arrest claim because
the complaint's allegations were merely conclusory and generally lacked a factual foundation)
(quoting <u>Smith v. Local</u> 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d. Cir.2002)). Plaintiffs must
plead sufficient facts to allow the Court to infer that their "confinement was not otherwise
privileged." <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003).  Plaintiff failed to plead
any facts supporting allegations that the arrests of November 27, November 8, September 24 and
October 15 were not privileged. On the contrary, plaintiff's guilty plea for these four arrests, which
were consolidated under one docket number (Ex. B, Plt. Cert. Disp.)[2] leads to the inference that the
arrests were in fact privileged. A "plaintiff can under no circumstances recover if he was convicted of
the offense for which he was arrested." Cameron v. Fogarty, 806 F.2d 380, 387 (2dCir. 1986); see
Sealey v. Fishkin, 96 cv 6303 (RR), 1998 WL 1021470, at *4 (E.D.N.Y. Dec. 2,1998) (granting
summary judgment dismissing false arrest claim on the basis that plaintiff was convicted, on his own
guilty plea, to disorderly conduct, a "violation" rather than a crime).See <u>Caravalho v. City of New</u>

---

[2] It is appropriate for the Court to consider the Certificates of Disposition at this stage because plaintiff admits in his
Complaint that he did in fact plead guilty (see Complaint ¶ 136), and thus the Certificates of Disposition setting
forth the disposition of these arrests are incorporated by reference in, and are integral to, the FAC. See <u>Chambers v.</u>
<u>Time Warner, Inc.</u>, 282 F.3d 147, 153-54 (2d Cir. 2002) (holding that district court could properly consider the text
of contracts on motion to dismiss because Amended Complaint was "replete with references to the contracts" and
the content of the contracts was integral to the Amended Complaint); see also <u>San Leandro Emergency Med. Grp.</u>
<u>Profit Sharing Plan v. Philip Morris Companies, Inc.</u>, 75 F.3d 801, 809 (2d Cir. 1996), <u>Marom v. City of New</u>
<u>York, et. al</u>, 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. March 7, 2016)

York, 13 CV 4174 (PKC), docket [182-183](Despite numerous dispersal orders in Zuccotti Park, Plaintiffs instead sat down and locked arms and refused to leave).  This conduct provided probable cause for their arrest for, *inter alia*, the offense of trespass, as a matter of law.  See Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. Apr. 9, 2013) (finding probable cause arising out of the same event and conduct); also See Marom v. City of New York, et. al, 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. March 7, 2016).  As such, plaintiff's false arrest claims with respect to these four arrests must be dismissed.

"[T]he existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Torraco v. Port Auh., 615 F.3d 129, 139 (2d Cir. 2010) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks and citation omitted).

With respect to plaintiff's arrest on October 1, 2011 on the Brooklyn Bridge, the Second Circuit has already found that those arrests were in fact made with probable cause.  The Second Circuit, in Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) determined that NYPD officers had probable cause to arrest over *seven hundred* OWS protestors. In Garcia, plaintiffs brought a putative class action relating to their October 1, 2011 arrests during a march from Zuccotti Park over the Brooklyn Bridge to Brooklyn, New York.  Judge Rakoff originally denied in part defendants' motion to dismiss the complaint, holding that the individual defendants were not entitled to qualified immunity.  See Garcia v. Bloomberg, 865 F. Supp. 2d 478 (S.D.N.Y. 2012).  On appeal, a Second Circuit panel initially affirmed.  See Garcia v. Doe, 774 F.3d 168 (2d Cir. 2014).  But the panel

reversed itself, and reversed Judge Rakoff's decision with instructions to dismiss the complaint.  See Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014).  The Second Circuit determined that NYPD officers "had sufficient evidence to establish cause on each of the elements of a disorderly conduct violation."  Id. at 92.   Although the issue on appeal addressed the qualified immunity issue, "the Second Circuit repeatedly made clear that its analysis applied to the law of probable cause, as well as the law of qualified immunity."   Garcia v. Bloomberg, No. 11 Civ. 6957 (JSR), 2015 U.S. Dist. LEXIS 123407, at *9 (S.D.N.Y. Sept. 9, 2015).   As such, plaintiff's false arrest claim for his arrest of October 1, 2001 should be dismissed.

Finally, with respect to plaintiff's arrest on October 26, 2011, in his Second Claim for Relief, plaintiff claims, that he was "arrested . . . without probable cause" by the defendants.  See, Ex. A ¶268.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007):  "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 570 (a complaint must include sufficient facts to state a claim that is *plausible*, not merely *conceivable*).

**Officers MacNamara and Waring**.  With respect to these officers, plaintiff alleges only that they "seized and arrested" him.  See Ex. A ¶ 112.  Such allegations are insufficient to support a false arrest claim.  See, e.g., Mayzick v. County of Nassau, 32 F. Supp. 3d 399, 402-403 (E.D.N.Y. 2014) (merely stating that plaintiff was falsely arrested by the defendants and was deprived of liberty as a result insufficient to withstand a motion to dismiss under Iqbal); Yorzinski v. Imbert, 39 F. Supp. 3d 218, 228 (D. Conn. 2014) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) and holding that an allegation that the defendant officer arrested plaintiff "along with" another officer was insufficient to state a Fourth Amendment violation even if the arrest by the

fellow officer was wrongful); <u>Hewitt v. City of New York</u>, 2011 U.S. Dist. LEXIS 11479 at 4-5 (E.D.N.Y. Feb. 7, 2011) (that defendant officers merely "participated" in an arrest insufficient to sustain a false arrest claim).

  <u>**All Other Police Officers**</u>.  With respect to the remaining defendant police officers – plaintiff's false arrest claim fails as well, as they were not personally involved in his arrest. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006).  Here plaintiff fails to plead that any other officer named in this action was personally involved in, and therefore responsible for, any alleged constitutional violation stemming from his October 26, 20111 arrest. Even where an officer did not personally act, an officer can be held liable for failing to intercede/intervene where "that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Here, plaintiff fails to articulate any realistic opportunity to intervene by any officer in order to prevent any alleged constitutional harm from occurring. Based on the foregoing, plaintiff's claims against the remaining defendants should be dismissed.

## PLAINTIFF FAILS TO STATE A CLAIM FOR EXCESSIVE FORCE

  Plaintiff's Forth Claim for Relief is a claim of excessive force during "most, if not all of the subject arrests." (Ex A ¶ 280)  The only arrest date in which plaintiff provides some details of the alleged force used against him is September 24, 2011.  He alleges that on that date, an unknown ("John Doe") officer pushed him, lunged at him, swung his fists at him, and then numerous John Doe officers "tackled…and began to hit plaintiff with their fists, feet and batons," <u>See</u> Ex. A, ¶¶ 56, 59. Plaintiff does not plead what physical injuries, if any, resulted from this interaction.

  Based on the facts asserted, plaintiff's claim for excessive force should be dismissed.

It is well established that plaintiff must plausibly show that he suffered physical injuries as a result of the alleged excessive force. See Davis v. United States, 2004 U.S. Dist. LEXIS 2551, *28 n.6 (S.D.N.Y. 2004) ("Emotional pain and suffering cannot form the basis of an excessive force claim."); Guerrero v. City of New York, 2013 U.S. Dist. LEXIS 25476, at *12-13 (S.D.N.Y. Feb. 21, 2013) (granting motion to dismiss plaintiff's claim that officers handcuffed him in an excessively tight manner and "threw him around like a toy" but only caused mental and emotional harm).

      Force not resulting in injuries cannot be considered excessive under the Fourth Amendment.  See Marom v. City of New York, 2016 U.S. Dist. LEXIS 28466, at *18 (S.D.N.Y. Mar. 7, 2016)( on a motion to dismiss, dismissing OWS protestor's excessive force claim even where plaintiff alleged being "grabbed [] by her arms", pulled [] by her arms, and thrown "onto the ground" and that an officer "twisted her arm back as he placed plastic flexcuffs on her"); Nogbou v. Mayrose, 2009 U.S. Dist. LEXIS 96118, at *15-19 (S.D.N.Y. Oct. 15, 2009) (dismissing excessive force claim and finding plaintiff's allegations that officers kicked him, dragged him out of a cardboard box, handcuffed him in an unreasonably tight manner, and violently pushed him into an ambulance to be *de minimis* force), aff'd, 400 Fed. Appx. 617, 619 (2d Cir. 2010)).   Additionally, plaintiff's conclusory allegation that he suffered "personal injuries…emotional distress, anguish, anxiety, fear, humiliation…", Ex. A., ¶ 284 is insufficient.  E.g., Boley v. Durets, 2013 U.S. Dist. LEXIS 177862 at 27-28 (E.D.N.Y. Dec. 10, 2013) (mere assertions of "physical injuries" and "serious permanent personal injuries of body and mind" arising out of "forceful contact" insufficient to state an excessive force claim without specific allegations of the type of injuries suffered).

      Courts have held "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof . . . ."  Graham v. Connor, 490 U.S. 386, 396 (1989) (citations omitted).  Thus, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of 'the nature and quality

9

of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations omitted).

A plaintiff must establish "that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, at *11 (S.D.N.Y. Mar. 21, 2005). Here, plaintiff's claim for excessive force, even when read most favorably to him, does not give rise to a constitutional violation. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 397. Accordingly, "a de minimis use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Moreover, plaintiff fails to identify any defendant, save "John Doe" defendants, who used this alleged excessive force against him. As noted "[i]n this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Smith v. New York City Police Dept, 06 Civ. 15436 (S.D.N.Y. Feb. 4, 2010) (JSR), 2010 U.S. Dist. LEXIS 9917, *4 (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). "To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation." Ricks v. O'Hanlon, 07 Civ. 9849 (S.D.N.Y. Jan. 19, 2010) (WHP), 2010 U.S. Dist. LEXIS 4189 *4 (citing Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)).

 "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." Vesterhalt v. City of New York, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009) (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)). An arrestee "must submit some sort of evidence that [an officer] was present at the scene of the alleged assault" to withstand a motion for summary judgment

on personal involvement. <u>De Michele v. City of New York</u>, 09 Civ. 9334 (S.D.N.Y. Sept. 24, 2012) (PGG), 2012 U.S. Dist. LEXIS 136460, *52 (<u>citing</u> <u>Munoz v. Martinez</u>, 2005 U.S. Dist. LEXIS 48255, *8 (S.D.N.Y. 2005), Report & Recommendation adopted by 2005 U.S. Dist. LEXIS 48258 (S.D.N.Y. 2005)).

Plaintiff cannot show, and will be unable to prove, that any of the individual officer defendants had any role in his alleged excessive force claim, or to the extent they were near plaintiff, that they had any meaningful opportunity to intervene. This is further cemented by plaintiff's failure to plead with specificity his individual excessive force claims against the individual defendants. Plaintiff cannot show that the individual officers were personally involved in the force he alleges and therefore cannot sue *en masse* the defendant officers for his alleged constitutional violations simply by virtue of their common employer. Accordingly any excessive force claims against the individual defendants must be dismissed.

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Alternatively, the defendant police officers are entitled to qualified immunity. An arresting officer is entitled to qualified immunity where "arguable probable cause" to arrest exists. <u>Zalaski v. City of Hartford</u>, 723 F.3d 382, 390 (2d Cir. 2013); <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004). Such arguable probable cause is present where "it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met". <u>Zalaski</u>, 723 F.3d at 390; <u>Escalera</u>, 361 F.3d at 743 (internal quotation marks omitted); <u>accord</u> <u>Walczyk v. Rio</u>, 496 F.3d 139, 163 (2d Cir. 2007). A plaintiff is required to plead sufficient facts showing that qualified immunity would not be available. <u>See</u> <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2066-67 (2014); <u>accord</u> <u>Garcia v. Doe</u>, 764 F.3d 170, 191 (Livingstion, J., dissenting), <u>reh'g granted and withdrawn</u>, 774 F.3d 168, <u>amended by</u>, 779 F.3d 84 (2d Cir. 2014); <u>Cadwallader v. Devlin</u>, 2016 U.S. Dist. LEXIS 1409 at 36 (N.D.N.Y Jan. 7, 2016)

(further noting that "[t]o survive a motion to dismiss based on qualified immunity, a plaintiff must plead facts sufficient to meet the *Iqbal* plausibility standard"); see also Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) (noting "that qualified immunity can be established by the facts alleged in a complaint" and "should be resolved when possible on a motion to dismiss . . . to avoid subjecting public officials to time consuming and expensive discovery procedures" (citations omitted). Plaintiff's Complaint fails to describe how any defendant acted contrary to clearly established law or even in an unreasonable manner. It also does not allege any facts that would lead to an inference that the arresting officers knowingly violated the law.  Since plaintiff fails to plead any facts supporting the contention that there was not actual or arguable probable cause based on the totality of the facts and circumstances known to the defendants, he fails to state a plausible false arrest claim.

Alternatively, plaintiff's claims must be dismissed as the defendants are entitled to qualified immunity.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014). Qualified immunity, when properly observed, grants government officials protection not only from liability, but from discovery.  "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." Iqbal, 129 S.Ct. 1953 (calling the avoidance of discovery a serious and legitimate concern).  The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is an objective test based on the knowledge possessed at the time, but without considering the subjective intent, motives or beliefs of the government official.  Garcia v.

Doe, 779 F.3d 92 ("The relevant, dispositive inquiry in determining whether a right is clearly establishes is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted).   Here, plaintiff cannot pierce qualified immunity because the facts presented demonstrate that in the very least reasonable officers could disagree as to whether there was probable cause to arrest him.   Additionally, defendants are entitled to qualified immunity on the remainder of plaintiff's claims because a reasonable argument can be made that officers were properly policing the marches and demonstrations at which plaintiff was arrested. Lastly, the individual defendants are entitled to qualified immunity as to plaintiff's excessive force claim as reasonable officers could differ as to whether the force used was appropriate.

## PLAINTIFF FAILS TO STATE A CLAIM
## UNDER THE FIRST AMENDMENT

Plaintiff's Fifth Claim for Relief appears to be a First Amendment Retaliation claim. This claim fails as a matter of law because: 1) There was probable cause to arrest plaintiff; 2) Defendants are entitled to qualified immunity; and 3) plaintiff's speech was not limited based on content.   Where, as here, there is finding of either probable cause or qualified immunity,  plaintiff's First Amendment, , Malicious Abuse of Process, and Failure to Intervene claims are barred.   See, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996) (citation omitted) (barring First Amendment claim where there was probable cause); Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990)(no First Amendment claim where there was qualified immunity); See, e.g., Husbands ex rel. Forde v. City of New York, 335 Fed. Appx. 124, 128 (2d Cir. 2009) ("The existence of probable cause to arrest . . . defeats . . . claims for malicious prosecution."); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003);  See, Irish v. City of New York, No. 09 Civ. 5568 (RMB), 2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. Dec. 6, 2010) (finding that probable cause to issue process "negates a claim for abuse of process"); Feinberg v. City of New York, No. 99

Civ. 12127, 2004 U.S. Dist. LEXIS 16098 (S.D.N.Y. Aug. 13, 2004) (no failure to intervene claim upon finding that the officer's did not violate a constitutional right).

Here, Ppaintiff fails to plead facts to establish a lack of probable cause or to overcome Defendants' right to qualified immunity for his First Amendment claims.  Plaintiff also cannot satisfy the first and second requirement of a retaliation claim because plaintiff does not plead facts establishing he was engaged in protected speech.  Plaintiff only states that he was "a participant in a march"(Ex. A, ¶ 49); "present as part of a march (Id. at ¶ 69); "participating in an Occupy Wall Street march (Id. at ¶ 101) "participating in another Occupy Wall Street march in Zucotti Park  (Id. at¶ 114) "present in or near Zucotti Park" (Id. at ¶ 122)  Plaintiff cannot plausibly plead that the Defendants' conduct was substantially motivated by that  conduct and not by probable cause. Plaintiff must present specific factual allegations that make his claim more than possible, but plausible in the face of the alternative explanation.  Iqbal, 556 U.S. at 681.  Plaintiff only presents boilerplate allegations of constitutional violations, and his First Amendment claims must be dismissed. Moreover, plaintiff's First Amendment claim fails as pled and under the facts presented. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).  Plaintiff's First Amendment retaliation claim fails as the police actions were reasonable and qualified immunity shields the actions of the officers.

Moreover, where a seizure is justified under the Fourth Amendment a plaintiff cannot maintain a separate First Amendment Retaliation theory.   "[Plaintiff's] claim[] of [] First Amendment retaliation fail[s] because defendants had probable cause. . ." Fabrikant v. French, 691 F.3d 193, 215-16 (2d Cir. 2012); Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social

protest.") (quotations omitted); <u>Caravalho, et al. v. City of New York</u>, 2016 U.S. Dist. LEXIS 44280, S.D.N.Y. March 31, 2016.  Here, as outlined above defendants' actions were amply justified under the Fourth Amendment.  As such, plaintiff cannot attempt to bootstrap § 1983  liability under a First Amendment theory by reference to lawful and justified seizures.  To the extent the Court dismisses plaintiff's Fourth Amendment claim, or finds qualified immunity for defendants, Plaintiffs' First Amendment retaliation theory must be dismissed.

Plaintiff's First Amendment retaliation claim also fails as he suffered no chill to his First Amendment rights.  "To prevail on a First Amendment retaliation claim, a plaintiff must show, *inter alia*, that defendants' actions had some actual, non-speculative chilling effect on his speech, or that the retaliation inflicted some concrete harm[.]"  <u>Brinn v. Syosset Pub. Library</u>, No. 14 cv 1448, 2015 U.S. App. LEXIS 21635, at *5 (2d Cir. Dec. 15, 2015) (quotations omitted)(dismissing retaliation claim where plaintiff continued to engage in the same First Amendment protected conduct after retaliation).  Here, plaintiff did not suffer any chill to his First Amendment rights, in fact his participation in OWS continued, as evidenced by the number of OWS demonstrations he participated in which are the subject of this lawsuit, precluding any First Amendment retaliation claim.  As his seizure was proper, plaintiff cannot maintain his First Amendment retaliation theory. In order to prevail on this claim, plaintiffs must plead facts showing that:  "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001).  Where the action of which plaintiff complains is an arrest, and where the arrest is supported by probable cause, "an inquiry into the underlying motive for the arrest need not be undertaken," because the test for probable cause is <u>strictly</u> objective.  <u>Id</u>. (citing cases).  Put another way, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in

reality an unsuccessful attempt to deter or silence criticism of the government." Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996) (citation omitted).

Similarly, when "there [are] reasonable grounds for the defendant to believe that probable cause exist[s], the defendant [is] entitled to qualified immunity" from any First Amendment claim based on the arrest. Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir. 1992) (citing Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990)). In such a case, the court will not examine the motives behind the arrest. *Id*. at 1179-80. "Arguable probable cause," See, Amore, 624 F.3d at 536, is sufficient in this context to defeat any First Amendment claim. See, Magnotti, 918 F.2d at 368 (granting officer qualified immunity on First Amendment claim, where undisputed facts showed that "an officer in [the defendant's] position had reasonable grounds to believe probable cause sustained the warrant" for which he applied to a neutral magistrate).

Applied here, the foregoing rules require dismissal of plaintiffs' First Amendment claim, either outright or on grounds of qualified immunity. Officers had probable cause as a matter of law to arrest the plaintiff.

## PLAINTIFF FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS

Plaintiff's First Claim for Relief appears to include an abuse of process claim (Ex. A, ¶ 261(f)), which presumably incorporates his retaliatory prosecution claim (Ex. A, ¶ 261(e)). As noted above plaintiff fails to plead any facts establishing that his arrests were made without probable cause, which is fatal to any claim for abuse of process. See Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466, *15-16 (S.D.N.Y. 2010) (a finding of probable cause defeats a claim for abuse of process) (citing Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, at *49-50 (S.D.N.Y. 2009).

Even if this Court were to find that Plaintiff plausibly pled a lack of probable cause this claim for abuse of process still fails. In order to state a claim for which relief may be granted, Plaintiff must plausibly allege that defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." Marom v. City of New York, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *26 (S.D.N.Y. Mar. 7, 2016) ).

Here, plaintiff's failure to sufficiently plead that Defendants employed process in order to obtain a collateral objective, is fatal to her abuse of process claim. As noted in De Santis v. City of New York, the requirement of a collateral objective is not met merely by showing a malicious motive; there must be an improper purpose for the use of process.  De Santis v. City of New York, 2011 U.S. Dist. LEXIS 99126, at *24 (S.D.N.Y. 2011); Hauser v. Bartow, 273 N.Y. 370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the court.")). See also Marom v. City of New York, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *26 (S.D.N.Y. Mar. 7, 2016) (In dismissing Occupy Wall Street plaintiffs' malicious abuse of process claim, the Court noted that "[a] malicious motive alone, [], does not give rise to a cause of action for abuse of process.") (citations omitted).

Further, the Complaint is devoid of any facts to suggest a collateral objective occurred after the criminal process was initiated. See Richardson v. N.Y.C. City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247, at *45-47 (S.D.N.Y. 2009) (collecting cases); Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim.")  Here, plaintiff pleads no facts regarding any defendants' post-arraignment conduct.

Moreover, plaintiff pleads no plausible facts to suggest he suffered actual or special damages from the alleged abuse of process. See Bd. Of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 405 (1975) (citing  Bohm v. Holzberg, 365 N.Y.S.2d 262, 264 (App. Div. 1975) ("[P]laintiff's allegations contain no mention of special damage…the law is clear that a cause of action for [abuse of process] must contain a statement of reasonably identifiable losses sustained by the plaintiff…"). Finally, plaintiffs' abuse of process claim must also be dismissed as duplicative. See, e.g., Zahrey v. City of New York, 2009 U.S. Dist. LEXIS 31893, * 34-35 (S.D.N.Y. 2009) (dismissing some of plaintiff's claims as duplicative where cause of action was subsumed in plaintiff's other more specifically-alleged constitutional violations). Based on the foregoing, any claims predicated on a malicious abuse of process must be dismissed.

## PLAINTIFFS FAIL TO PLAUSIBLY PLEAD PERSONAL INVOLVEMENT AGAINST ANY NAMED DEFENDANT

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).  In most instances plaintiff fails to identify the defendant purportedly involved in, and therefore responsible for, any alleged constitutional violation.  This lack of personal involvement does not justify plaintiff naming numerous parties who he cannot allege had any contact with him whatsoever.

As an attempt at a catchall theory plaintiff pleads failure to intervene.  Even where an officer did not personally effect an arrest, an officer can be held liable for failing to intercede/intervene where "that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Failure to intervene and failure to supervise theories, as derivative claims, must be dismissed to the extent the attached cause of action is dismissed.  Pluma v. City of

New York, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, 23 n5 (S.D.N.Y. Mar. 31, 2015)(dismissing failure to intervene claim when underlying constitutional claim is dismissed).

As it relates to plaintiff's excessive force claim, he fails to articulate any facts that explain how a defendant had a realistic opportunity to intervene in that alleged use of force, or identify a defendant who could have known to intervene if they had the opportunity. "In order for a law enforcement officer to be held liable for another officer's use of excessive force, there must have been a realistic opportunity [for the former] to intervene to prevent the harm from occurring." Rogoz v. City of Hartford, 796 F.3d 236, 251 (2d Cir. 2015)(quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Plaintiff does not identify any facts that would put an officer on notice that his constitutional rights were being violated, or imminently going to be violated. In fact, his allegation that he was subjected to force during the course of an arrest would make it reasonable for any officers nearby but not directly involved to assume plaintiff was fighting his arrest, not that they needed to stop some imminent harm from being inflicted. Regardless, the complaint does not identify any officers who would have had an opportunity to intervene, even if they had knowledge of his rapidly impending injury. Plaintiff has lengthened his pleadings in that regard to name various John Does, but cannot offer any substantive addition that makes his failure to intervene theory plausible as it relates to any defendant.

Moreover, regarding the alleged use of excessive force in particular, plaintiff has failed to state a claim, and therefore cannot maintain a derivative failure-to-intervene claim on this ground. See, e.g., Waddlington v. City of New York, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013) (an underlying constitutional violation is necessary to maintain a failure-to-intervene claim); Hewitt v. City of New York, 2012 U.S. Dist. LEXIS 141067 at *34 (E.D.N.Y. Sept. 27, 2012) (same), aff'd, 544 Fed. Appx. 24 (2d Cir. 2013).

### PLAINTIFF HAS FAILED TO STATE A *MONELL* CLAIM

Plaintiff fails to sufficiently plead any cause of action for municipal liability as a

matter of law and this claim must be dismissed.  Plaintiff alleges three separate policies by the City of New York; 1)  "[T]argeting participants in Occupy Wall Street activities for wrongful arrest without cause, and the application of excessive force against them"; 2)   "[A]rresting individuals selected at random from within groups engaging in peaceful protest, for the purpose of frightening and deterring the remainder of those protesting"; and 3)  "[U]se of trap and detain/trap and arrest tactics, creating unjustified risk of injury."  Decl. Exhibit A, ¶ 120(A)-(C). Plaintiff in Pluma v. City of New York, et al., 2015 U.S. Dist. LEXIS 48134, S.D.N.Y., March 31, 2015, represented by the same counsel as plaintiff herein, based his Monell claim on the same three alleged policies.  On defendants' motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Hon. Loretta Preska dismissed plaintiff's Monell claims based on those three policies, noting that plaintiff could not establish the causation requirement of a Monell claim.  The same lack of a connection occurs here.

A single incident is insufficient to establish municipal liability and plaintiff must set forth additional allegations to support a claim.  "In order to hold a municipality liable under § 1983, a plaintiff must establish that the municipality itself was at fault, such as through some policy statement, ordinance, regulation, officially-adopted decision, or a governmental custom… He alleges only a single incident. As such, he is unable to maintain his claim for municipal liability against the City of New York."  Eaddy v. City of New York, 2011 U.S. Dist. LEXIS 144976, 7-8 (S.D.N.Y. Dec. 16, 2011) (citing Monell, 436 U.S. 690-91).  However, additional factual allegations must not just plausibly establish a policy but one so widespread and persistent to "practically have the force of law."  Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011).

An alleged policy must also be sufficiently defined. In dismissing a claim that the New York City Police Department "acquiesced in or tacitly authorized 'indiscriminate mass false arrest of groups of protesters in the absence of individualized probable cause'" [t]he Court held "The

breadth with which plaintiffs define the alleged policy underscores its implausibility… The plaintiffs cannot bridge the gap between the broad, conspiratorial policy they attribute to the City and the violations that they have plausibly alleged in this case." <u>Garcia v. Bloomberg</u>, 865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012).  In <u>Garcia</u> the Court went on to discuss the specific examples of the policy offered as insufficient, and that failure as fatal to the claim.  In this case plaintiff fails to plead, and cannot push across the threshold of plausibility, any of the three claims.

Even a policy, however alleged, is not sufficient to impose municipal liability.  There must be a causal link between the alleged constitutional violation suffered by Plaintiff and the policy alleged. "[T]he plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights." <u>Zachary v. City of Newburgh</u>, 2014 U.S. Dist. LEXIS 57236, 14-15 (S.D.N.Y. 2014) (quoting <u>Vippolis v. Vill. of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985)).

"Plaintiff… must identify a policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, pursuant to which it inflicted the injury."  <u>Lowery v. City of New York</u>, 2014 U.S. Dist. LEXIS 77533 (S.D.N.Y. June 6, 2014) (citing <u>Monell</u>, 436 U.S. at 694; <u>Oklahoma v. Tuttle</u>, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)).  Here each of plaintiff's three alleged basis of municipal liability fail as plaintiff cannot show any causal link between the policies alleged and his injury.

Plaintiff's allegation that the City targets Occupy Wall Street participants for arrest without cause fails as overbroad, unsupported, and unrelated to plaintiff's alleged incident.  Plaintiff offers examples of individuals arrested during Occupy Wall Street activities, lawsuits unrelated to Occupy Wall Street, and several conclusory statements generally claiming targeted arrests without probable cause.  The lawsuits must be disregarded.  "[C]itation to various lawsuits" is "not probative

of the existence of an underlying policy that could be relevant" Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22-23 (2d Cir. 2012); "The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a Monell claim." Walker v. City of New York, 2014 U.S. Dist. LEXIS 42272, 6-7 (S.D.N.Y. 2014) (finding no "custom or practice so persistent and widespread as to practically have the force of law

Plaintiff also relies upon the arrests of other individuals as factual support for the proposition that the New York City Police Department targets Occupy Wall Street participants for arrest without probable cause.  For two of these incidents Plaintiff relies on statements from *The Nation*, and focuses on arrests where perjury was claimed.  Decl. Exhibit A, ¶216.  For the final arrest, plaintiff states that it was a violent arrest, and the case was declined to prosecute, but provides no additional information.  Defendants note that this incident did result in a lawsuit, Treffs v. City of New York, 12 CV 3030 (HB), S.D.N.Y.

These few incidents cannot establish plaintiff's sweeping, vague claimed policy of targeting Occupy Wall Street participants for arrest.  Escobar v. City of New York, 765 F.Supp.2d 415, 420 (E.D.N.Y. 2011) (finding "a handful of isolated incidents insufficient to create a material fact in dispute about the existence of any seizure-related policy"); Edwards v. City of New York, 2005 U.S. Dist. LEXIS 34376, *33 (S.D.N.Y. 2005) (Monell "would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable"); Giaccio v. City of New York, 308 Fed. Appx. 470, 471-72 (2d Cir. 2009) (identification of "at most, only four examples of [alleged practice]… falls far short of establishing a practice that is so 'persistent or widespread' as to justify the imposition of municipal liability.") Plaintiff's asserted policy is essentially the same policy as claimed in Garcia v. Bloomberg, were it was dismissed as "implausible" and "conspiratorial."  865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012).

Even assuming plaintiff could plausibly assert such a policy his claim still fails. Plaintiff's policy alleges improper targeted arrests of Occupy Wall Street participants. "[C]ausation has two components. The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection -- an affirmative link -- between the policy and the deprivation of his constitutional rights." Vippolis v. Haverstraw, 768 F.2d 40, 44 (2d Cir. N.Y. 1985). Plaintiff can show neither that the City took any action through a policy, nor provide any link between him slipping and the policy he alleges here. Accordingly, plaintiff's first claimed municipal policy, and any attendant claims for liability, must be dismissed.

Plaintiff next claims that "[t]he City of New York has a policy and practice of arresting individuals selected at random from within groups engaging in peaceful protest for the purpose of frightening and deterring the remainder of those protesting." Decl. Exhibit A, ¶ 225.

This claimed policy fails to state a claim as it is unsupported, vague, and unrelated to Plaintiff's alleged incident. Plaintiff relies upon largely media sources, identified and unidentified, for the proposition that the New York City Police Department selects individuals for arrest randomly. . These sources include the *Chronicle of Higher Education*, *The New York Times*, *The Atlantic*, *Gothamist.com* and actress Ellen Barkin, and covers a period of time between September 19, 2011 and September 17, 2012. At the outset, this claimed policy is a shadow of the first claimed municipal policy, and should not be considered a separate cause of action.

Here, through third party accounts plaintiff is unable to identify a single individual arrested, nor to describe any activity undertaken prior to their arrest, or the circumstances surrounding those arrests. More broadly, the arrests identified are devoid of any context at all. As

plaintiff may be aware, protests frequently include individuals committing acts of civil disobedience, deliberately violating the law to bring attention to a cause. From the very well attended Occupy Wall Street movement it is unclear how these scattered and isolated examples could rise to the level of a systemic policy as alleged.

Finally, plaintiff alleges that the City engages in the "use of trap and detain/trap and arrest tactics, creating unjustified risk of injury." Plaintiff's claim fails because the policy alleged is implausible, conspiratorial, unsupported and again, unrelated to the alleged Constitutional violation that brings us before the Court.

Plaintiff defines the trap and arrest as the use of police lines against targeted protests in order to trap protestors, and others, in the absence of warnings, to reach those subject to arrest . Decl. Exhibit A, ¶ 237. Plaintiff attempts to establish that such a policy exists by reference to incidents bothe proior to and during the Occupy Wall Street demonstrations. Plaintiff, for instance, argues first that the arrests of demonstrators who took over the roadway of the Brooklyn Bridge show the use of the illegal trap and arrest tactics. However, as the Court considered in <u>Garcia v. Bloomberg</u> 865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012), that incident was not evidence of any Constitutionally violative policy.

## <u>PLAINTIFF'S CLAIM FOR DEPRIVATION OF FAIR TRIAL RIGHTS MUST BE DISMISSED</u>

To the extent plaintiff makes a claim for deprivation of fair trial rights, any such claim must also be dismissed. To overcome a motion to dismiss, plaintiff must sufficiently allege that officers created false evidence likely to influence a jury's decision and forwarded it to prosecutors, thereby causing plaintiff to suffer a deprivation of liberty. <u>See</u> <u>Ricciuti v. N.Y.C.</u>, 124 F.3d 123, 130 (2d Cir. 1997); <u>accord</u> <u>Tavernier</u>, 316 F.3d at 138. Here, plaintiff alleges that defendant officers made

false statements in criminal court complaints (Ex. A, ¶¶ 66-68, 98, 120, 133) However, this allegation is conclusory and must be dismissed. <u>See</u> <u>Abdul-Rahman v. City of New York</u>, 2012 U.S. Dist. LEXIS 45653, *34 (E.D.N.Y. 2012).  Plaintiff pleads no facts that "specify in what way the statements, information, or testimony were false or even in what material respect the charges against [them] were false." <u>Id.</u>

In short, plaintiff's claims as they relate to a denial of rights to a fair trial must be dismissed as implausible and without merit.


## THE EQUAL PROTECTION CLAIM SHOULD BE DISMISSED

Plaintiff alleges that his Equal Protection rights were violated by the defendants.  (Ex A, ¶ 261h)  An Equal Protection claim is subject to a two-step analytical process.  <u>Kachalsky v. Cacace</u>, 817 F. Supp. 2d 235, 273 (S.D.N.Y. 2011) (citing <u>Phillips v. Girdich</u>, 408 F.3d 124, 129 (2d Cir. 2005)). "First, a plaintiff must 'demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" <u>Id</u>. "Second, he must show that 'the disparity in treatment cannot survive the appropriate level of scrutiny.'" <u>Id</u>.  Plaintiff, however, asserts no facts in the entirety of his prolix, 307 paragraph complaint to show that he was treated differently than others. This conclusory, unsupported allegation is insufficient to meet the test of plausibility required by *Iqbal* and warrants dismissal.  <u>See</u>, e.g., <u>Deniran</u>, 2009 U.S. Dist. LEXIS 28888, 13-14 ("conclusory allegation[s] of discrimination,' . . . without more, 'cannot withstand a motion to dismiss.'").

## **CONCLUSION**

For these reasons defendants ask that the Court dismiss plaintiff's Complaint with prejudice, together with such other relief as the Court deems just and proper.

Dated:  New York, New York
       April 4, 2016

                                     Zachary W. Carter
                                     Corporation Counsel of the
                                      City of New York
                                     *Attorney for Defendants*
                                     100 Church Street
                                     New York, New York 10007
                                     (212) 356-3517

                                 By:                   /s/
                                       _____
                                     Dara L. Weiss
                                     Senior Counsel

TO:     Wylie Steckow (by ECF)