UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
:
SEAN VINCENT,                                            :
:
                              Plaintiff,                 :
:                    14-CV-7744 (VSB)
            - against -                                  :
:                    **OPINION & ORDER**
:
DEPUTY INSPECTOR EDWARD WINSKI,                          :
et al.,                                                  :
:
                              Defendants.                :
:
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: __3/22/2018__

Appearances:

Wylie M. Stecklow
David A. Thompson
Stecklow Cohen & Thompson
New York, New York
*Counsel for Plaintiff*

Andrew J. Lucas
Joy T. Anakhu
Dara L. Weiss
Lamar D. Winslow
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Before me is the motion of New York City Police Department Officers Lisa Waring,

John McNamara, William Curley, William Grodnick, Thomas Manning, Edward Blanco, Wilson

Vernelly, Carbajal, Paul Reres, Deputy Inspector Edward Winski, and Captain Thomas Traynor

(the "NYPD Defendants"), former Mayor Michael R. Bloomberg, former New York City Police

Commissioner Raymond W. Kelly, and the City of New York (the "Municipal Defendants")

(collectively, "Defendants") to dismiss all claims in Plaintiff Sean Vincent's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 52.)[1] Plaintiff brings numerous claims against Defendants under 42 U.S.C. § 1983 related to four arrests made in connection with his participation in the Occupy Wall Street ("OWS") movement.[2] The claims against Winski allege his failure to intervene in one of the four arrests. Plaintiff also alleges that the Municipal Defendants are liable for all claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). For the following reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.  __Background__[3]

The arrests and court cases that form the basis of this action occurred during the early stages of the OWS movement, and were Plaintiff's first arrests. (*See* Am. Compl. ¶¶ 2–4.)[4] Although Plaintiff was also arrested two other times during this same time period, on September 24, 2011 and October 1, 2011, (*see* Compl. ¶ 4),[5] Plaintiff's amended claims specifically relate to four arrests made while he was participating in OWS protest activities on October 15, 2011, October 26, 2011, November 8, 2011, and November 27, 2011, (Am. Compl. ¶ 5). Plaintiff claims that subsequent to his arrests, he made at least fifteen court appearances, (*id.* ¶ 61);

---

[1] After Defendants moved to dismiss under Rule 12(b)(6) and Rule 12(c), Plaintiff filed the First Amended Complaint. (*See* Doc. 66, "Amended Complaint".) Defendants have not yet filed an answer to the Amended Complaint. As a result, because motions brought pursuant to Rule 12(c) can only be filed "[a]fter the pleadings are closed," I only address Defendants' Rule 12(b)(6) motion. *See Scott v. Abate*, No. CV-93-4589 (CPS), 1995 WL 591306, at *3 n.2 (E.D.N.Y. Sept. 27, 1995).

[2] The caption also names various "John Doe" Police Officers, and various "Richard Roe" supervising Police Officers, but there are no substantive allegations or claims against these purported defendants in the Amended Complaint.

[3] The following factual summary is drawn from documents of which I take judicial notice, Plaintiff's video, and the allegations of the Amended Complaint, which I assume to be true for purposes of this motion, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[4] "Am. Compl." refers to the Amended Complaint, filed June 1, 2016. (Doc. 66.)

[5] "Compl." refers to the Complaint, filed September 24, 2014. (Doc. 1.)

however, he does not attribute a specific number of court appearances to any particular arrest.

Plaintiff participated in other protest marches during the OWS movement and was part of the protest encampment in Zuccotti Park between September 17, 2011 and November 15, 2011. (*See id.* ¶¶ 28–29.) Plaintiff gave interviews to the media regarding OWS, (*id.* ¶ 56), and, upon information and belief, alleges that his photograph was disseminated by the New York City Police Department ("NYPD") because he was deemed a leader of OWS, (*id.* ¶ 57).

### A. *The Arrests*

### 1. The October 15, 2011 Arrest

Defendant Curley arrested Plaintiff without a warrant on October 15, 2011 during an OWS protest march on Sixth Avenue near West 37th Street. (*Id.* ¶¶ 59–60, 62.) Plaintiff had been marching as part of a larger group from Washington Square Park to Times Square. (*Id.* ¶ 63.) Plaintiff "began to act as a liaison between the NYPD and the marchers on both the east and west sidewalks of 6th Avenue." (*Id.* ¶ 65.) As a leader of the march on one side of Sixth Avenue, Plaintiff spoke with the leader on the other side approximately three times in order to keep the march together. (*Id.* ¶ 66.) Unnamed police officers allegedly encouraged Plaintiff in his efforts to keep the marchers together, with two officers informing other NYPD officers about Plaintiff's role in leading the march. (*Id.* ¶ 68.) Although Plaintiff was never told that he should stop trying to keep the marchers together, he was arrested without warning and charged with a disorderly conduct violation under New York Penal Law § 240.20(5)–(6), stemming from obstructing vehicular or pedestrian traffic and/or congregating with other persons in a public place and refusing to comply with a lawful order of the police to disperse. (*Id.* ¶¶ 69–70.) As a result of his arrest, Plaintiff was unable to participate in the Times Square protest. (*Id.* ¶ 71.) Plaintiff also claims that Curley made numerous false statements in the related criminal

complaint, including that Plaintiff had entered the street repeatedly in violation of a lawful order and caused public inconvenience, annoyance, and alarm to pedestrians who were unable to walk on the sidewalk. (*Id.* ¶¶ 72–75.)

### 2. The October 26, 2011 Arrest

Defendants Waring and McNamara arrested Plaintiff without a warrant on October 26, 2011 during an OWS protest march on Reade Street near Broadway. (*Id.* ¶¶ 59–60, 77–80, 83–84.) Without issuing an order to disperse and seemingly for no reason, unidentified NYPD officers "grabbed Plaintiff, pulled him to the ground, [and] placed Plaintiff's face firmly into the sidewalk before placing flexicuffs on him." (*Id.* ¶ 84.) Plaintiff was thereafter charged with violating New York Penal Law § 195.05, a misdemeanor charge for obstructing governmental administration, and § 240.20(5). (*Id.* ¶ 87.) Plaintiff claims that in connection with the charges, Waring and McNamara submitted false statements, Waring in a criminal complaint, and McNamara in a criminal complaint and supporting deposition. (*Id.* ¶¶ 88–89.) One of the false statements was that Plaintiff was part of a group of individuals locking arms in the traffic lanes on the street and blocking traffic. (*Id.* ¶ 90.)

### 3. The November 8, 2011 Arrest

Defendant Grodnick arrested Plaintiff without a warrant on November 8, 2011 while he was exiting Zuccotti Park during the OWS occupation. (*Id.* ¶¶ 59–60, 94, 98–99.) An NYPD officer stopped Plaintiff and ordered him to return to the Park and stand behind metal barriers that had been set up. (*Id.* ¶ 94.) Plaintiff then discovered that there had been a report of a suspicious package north of Zuccotti Park. (*Id.* ¶ 95.) As this was in the opposite direction of where Plaintiff had been heading, Plaintiff asked if he could continue south. (*Id.*) The NYPD officer issued the same instruction to Plaintiff to move behind the metal barrier. (*Id.* ¶ 96.)

However, because Plaintiff was already behind the barrier, he asked, "I am already behind the barrier, what do you want me to do?" (*Id.* ¶ 97.) Grodnick then grabbed Plaintiff and arrested him, and Plaintiff was charged with violating New York Penal Law § 195.05 and § 240.20(6). (*Id.* ¶ 98.) Grodnick arrested Plaintiff based on information provided by Defendant Traynor. (*Id.* ¶ 99.) Plaintiff also alleges that Grodnick and Traynor submitted false information to the District Attorney's Office to support a criminal complaint, including that Traynor had asked Plaintiff four times to move from his location in Zuccotti Park and Plaintiff refused, that Plaintiff interfered with an ongoing police investigation, and that after refusing to move, Plaintiff stated in substance, "this is my park." (*Id.* ¶¶ 100–05.)

#### 4. The November 27, 2011 Arrest

Defendant Manning and a Detective Cabrera seized, detained, and arrested Plaintiff without a warrant on November 27, 2011 near Zuccotti Park. (*Id.* ¶¶ 59–60, 112.) Prior to the arrest, Plaintiff was in or near Zuccotti Park when he observed Winski, Cabrera, Manning, and other officers detain another individual on the sidewalk. (*Id.* ¶ 108.) As a sign of camaraderie, Plaintiff gave the individual a single pat on the back of the shoulder while walking past him. (*Id.* ¶ 109.) From the video submitted by Plaintiff, it appears that other pedestrians walked around the officers gathered around the arrestee, whereas Plaintiff walked between the officers and the arrestee in order to get close enough to pat him on the shoulder. (*Id.* Ex. A.) Officers then instructed Plaintiff to stand a certain distance away from the individual, and Plaintiff complied. (*Id.* ¶ 110.) The individual then asked Plaintiff to locate his wife and inform her that he was being arrested. (*Id.* ¶ 111.) Although difficult to hear in the video, it appears as if the officers asked or directed Plaintiff to step back. (*Id.* Ex. A.) Plaintiff alleges that while he attempted to hear the wife's name, Cabrera and Manning began a physical confrontation with Plaintiff, after

which they arrested him and charged him with obstructing governmental administration under N.Y. Penal Law § 195.05 and resisting arrest under § 205.30.  (*Id.* ¶¶ 111–12.)  Plaintiff alleges that Manning submitted false statements in his criminal complaint, including that Plaintiff had repeatedly stepped between the arresting officer and the other arrested individual.  (*Id.* ¶ 113.)  Contrary to Manning's statements, Plaintiff claims that he was approximately fifteen feet away from the individual being arrested, with at least three officers between him and the individual. (*Id.* ¶ 114.)

## B.    *The Dispositions*

According to Plaintiff, the October 26 charge was dismissed on January 30, 2012 by motion of the Assistant District Attorney ("ADA"), and the October 15, November 8, and November 27 charges (the "Remaining Charges") were all dismissed on October 10, 2012.  (*Id.* ¶¶ 76, 93, 107, 118.)  On October 10, 2012, Judge Matthew A. Sciarrino held a proceeding in the Criminal Court of the City of New York in the criminal docket corresponding to the September 24 charge.  (*See* Lucas Supp. Decl. Ex. C.)[6]  Plaintiff's current counsel, Wylie M. Stecklow, represented him during the criminal proceeding.  (*See id.*)  At the very outset of the proceeding, the ADA notified the Court that "the parties have reached a disposition.  It's a consolidated docket."  (*Id.* at 2:6-7.)  The ADA then outlined the plea bargain:  Plaintiff would plead guilty to one count of resisting arrest in connection with the September 24 charge, and if he remained arrest-free for six months, would then have the option to re-plead to a disorderly conduct violation.  (*Id.* at 2:10-20.)

After confirming under which docket the plea of resisting arrest would be entered and

---

[6] "Lucas Supp. Decl." refers to the Supplemental Declaration of Andrew Lucas in Support of Defendants' Motion to Dismiss, filed June 16, 2016.  (Doc. 67.)

otherwise confirming the agreed-upon sentence, the court then stated that "[t]he summonses are dismissed as covered." (*Id.* at 2:1-3, 2:13-25.) The ADA acknowledged by saying "yes judge," and after Judge Sciarrino asked Attorney Stecklow if that plea was acceptable, Attorney Stecklow confirmed that it was acceptable. (*Id*. at 2:24-3:3.) After doing so, Attorney Stecklow stated that "[a]t this point my client authorizes me to withdraw his previously entered pleas of not guilty on the various dockets and that are now being consolidated, and enters a plea of guilty to one count of resisting arrest arising out of the 9/24 – set of facts, that was in Union Square . . . . With the understanding that in six months, no new arrests, he will be able to convert that to a disorderly conduct, conditional discharge, with time served." (*Id.* at 3:2-12.) The Court then turned to Plaintiff and questioned him regarding his plea of guilty to the September 24 charge and his understanding of the corresponding waiver of his rights. (*Id.* at 3:13-4:3.) At the end of the proceeding, the Court adjourned the case for report, sentencing, and re-pleader on April 9, 2013. (*Id.* at 4:25-5:2.) Finally, after confirming with the ADA that the People were moving to dismiss the summonses as covered by the plea that was just taken, the court dismissed those cases as covered. (*Id.* at 5:3-8.) Although the transcript is unclear with respect to the precise charges corresponding to the summonses dismissed, (*see id.* at 2:1-3, 5:3-8), the parties concur that the docket numbers for the dismissed cases were consolidated with the September 24 charge and were the charges stemming from the October 15, November 8, and November 27 arrests. (*See* Lucas Supp. Decl. Ex. B; Defs.' Supp. Mem. 1; Pl.'s Opp. 11, 13–14.)[7]

Ultimately, on April 9, 2013, Plaintiff did plead guilty to a disorderly conduct violation in connection with the September 24 charge. (Lucas Supp. Decl. Ex. B.) According to the

---

[7] "Defs.' Supp. Mem." refers to Defendants' Supplemental Memorandum of Law in Support of their Motion to Dismiss, filed on June 16, 2016. (Doc. 68.) "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed on July 22, 2016. (Doc. 71.)

certificates of disposition relating to the Remaining Charges, which were each certified on September 14, 2015, the dispositions were simply that they were "consolidated with another case"—the September 24 charge—on May 14, 2012. (*Id.*)

## II.    **Procedural History**

This action was commenced when Plaintiff and Lorenzo Serna filed the Complaint on September 24, 2014 against numerous members of the NYPD, the City of New York, Bloomberg, and Kelly. (Doc. 1.) Certain of the Defendants who had been served, including the City of New York, filed an answer to the Complaint on April 3, 2015. (Doc. 17.) The case was then referred for mediation pursuant to Local Civil Rule 83.10, (*see* Dkt. Entry Apr. 3, 2015), and on April 7, 2015, I set an initial pretrial conference for October 15, 2015, (Doc. 18).

On October 14, 2015, I received two submissions: a letter from Plaintiff and Serna, attaching the information requested in my order setting the initial pretrial conference as well as a proposed case management plan and scheduling order, (Doc. 22), and a pre-motion letter from Defendants in anticipation of filing a motion to dismiss, (Doc. 23). Defendants' pre-motion letter also noted that Serna had accepted an offer of judgment during the mediation.[8] (*Id.*) On October 15, 2015, I held the initial pretrial conference and on that date, set a pre-motion conference for November 5, 2015. (*See* Dkt. Entry Oct. 15, 2015.) Plaintiff then filed a letter on October 30, 2015, requesting an extension of time to serve Defendants Grodnick and Waring,

---

[8] The parties submitted a stipulation and order of dismissal with respect to Serna on January 13, 2016, but the stipulation asked me to retain jurisdiction to enforce the settlement without providing me with a copy of the settlement agreement. (*See* Doc. 38.) As a result, I asked Defendants and Serna either to place the terms of their settlement agreement on the public record or revise their stipulation to remove the request that I retain jurisdiction. (*See id.*) Defendants requested two extensions of time to comply with this order, (Docs. 39, 44), and I granted their requests, (Docs. 40, 47). Defendants submitted a status report on February 26, 2016, noting that the issue was resolved between the parties and further court intervention was unnecessary. (Doc. 48.) I endorsed their letter on February 29, 2016, and instructed them to submit a revised stipulation of partial voluntary dismissal. (Doc. 49.) To date, the parties have not done so, although the Amended Complaint removes Serna as a plaintiff and contains no allegations referring to Serna. (*See* Doc. 66.)

both of whom had retired from the NYPD and whom Plaintiff had unwittingly failed to properly serve. (Doc. 24.) On November 4, 2015, I received another letter from Plaintiff, this time responding to Defendants' October 14, 2015 pre-motion letter, (Doc. 25), and thereafter issued an order instructing the parties to be prepared to discuss the issue of service and the anticipated motion to dismiss at the November 5 conference, (Doc. 26). At that conference, I set a briefing schedule with respect to Plaintiff's motion for an extension of time to serve Grodnick and Waring and, in accordance with that schedule, the parties briefed the issue fully. (Docs. 27–31, 33–34.) Affidavits were filed by all parties, (Docs. 42–43, 45–46), and on March 4, 2016, I entered an order granting Plaintiff's motion for an extension of time to serve Grodnick and Waring and setting a briefing schedule for Defendants' motion to dismiss, (Doc. 50).

Pursuant to that order, on April 4, 2016, Defendants filed their motion to dismiss. (Docs. 52–53, 56.) However, on April 18, 2016, Plaintiff filed a request for an extension of time to file his opposition, (Doc. 57), which I granted, (Doc. 58), and on April 29, 2016, Plaintiff filed a letter motion requesting leave to file an amended complaint, (Doc. 59). Defendants submitted a letter in opposition on May 3, 2016, (Doc. 60), and on May 6, 2016, Plaintiff filed a letter as a reply to Defendants' opposition, (Doc. 61). I set a pre-motion conference for May 12, 2016, (*see* Dkt. Entry May 6, 2016), and on May 10, 2016, Plaintiff wrote again to attach a proposed amended complaint and a redline to the initial complaint, (Doc. 63). I held the conference on May 12, 2016, during which I granted permission to Plaintiff to file an amended complaint, asked Defendants to determine, after reviewing the amended complaint, whether they wished to supplement their motion to dismiss or file a retooled motion to dismiss, and asked the parties to propose a briefing schedule. I also asked the parties to submit the plea allocution referenced in the pre-motion letters and, to the extent that the allocution related to one charge, to submit case

law addressing whether a plaintiff can bring a Section 1983 action when the criminal charges forming the basis of the action were consolidated and the plaintiff entered a guilty plea to one charge.

After the conference, Defendants filed a letter submitting the parties' proposed briefing schedule and requesting leave to file excess pages. (Doc. 64.) On June 1, 2016, I granted Plaintiff leave to file the amended complaint on or before June 3, 2016, entered the parties' proposed briefing schedule, and granted Defendants' excess pages request. (Doc. 65.) In accordance with that schedule, Plaintiff filed the First Amended Complaint on June 1, 2016, (Doc. 66), Defendants filed a supplemental memorandum of law and accompanying declaration on June 16, 2016, (Docs. 67–68), Plaintiff filed his opposition on July 22, 2016, (Docs. 71–72), and Defendants filed their reply on August 10, 2016, (Doc. 73).

On February 15, 2018, the parties filed a joint letter in which Plaintiff requested a pre-motion conference in anticipation of filing a motion to open discovery. (Doc. 78.) Defendants opposed Plaintiff's request. (*Id.*) In light of this decision and the directions I provide below, Plaintiff's motion for a pre-motion conference is denied.

### III.  **Applicable Law**

#### A.  *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); Fed. R. Civ. P. 10(c). In considering a motion to dismiss, a court may "consider matters of which judicial notice may be taken under Fed.R.Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data." *Smith v. City of N.Y.*, No. 12 Civ. 4572(KPF), 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 25, 2013). "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Jones v. Rivera*, No. 13-cv-1042 (NSR), 2015 WL 8362766, at *3 (S.D.N.Y. Dec. 7, 2015) (internal quotation marks omitted).

Although the Second Circuit has not addressed whether Federal Rule of Civil Procedure

10(c)—which provides that a "written instrument" attached as an exhibit to a pleading is incorporated into the pleading—extends to videos, *Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015), neither party objects to the admissibility of the video or my viewing the video as incorporated into the amended complaint. As such, I accept as true the facts set forth in the amended complaint to the extent they are not contradicted by the video evidence. *See Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (citing *Garcia*, 779 F.3d at 88); *see also Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order) (denying 12(b)(6) motion to dismiss where "video footage does not contradict or render implausible [plaintiff's] allegations" and where "the angle and quality of the video footage make details of the incident difficult to discern and in need of testimonial interpretation").

### B.    *Section 1983*

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. In other words, "[t]o state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Further, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Alternatively, "to impose liability on a municipality under § 1983, a plaintiff must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Newton v. City of N.Y.*, 779 F.3d 140, 152 (2d Cir. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)) (internal quotation

marks omitted).

## IV.    __Discussion__

Plaintiff asserts claims that he was (1) falsely arrested, (2) subject to malicious prosecution, (3) denied his fair trial rights, (4) retaliated against in violation of his First Amendment rights, and (5) subjected to malicious abuse of process, in connection with four specific arrests and subsequent charges.[9]  In moving to dismiss Plaintiff's claims, Defendants argue both that, given that the October 15, November 8, and November 27 charges were disposed of as covered by a guilty plea to the September 24 arrest, Plaintiff is foreclosed from now bringing his claims related to those charges, and that Plaintiff failed to plausibly allege any of the abovementioned violations in connection with any of the four arrests.  (*See* Defs.' Mem.; Defs.' Supp. Mem.)[10]  Defendants also argue that certain of the claims against certain Defendants should be dismissed for lack of personal involvement and, with respect to Defendant Winski, the claims should be dismissed because Plaintiff fails to properly plead a failure to intervene.  (*See* Defs.' Mem. 7–8, 12–13, 18–19; Defs.' Supp. Mem. 9 n.8, 10–11; Defs.' Reply 6–7, 10–11.)[11]  Finally, Defendants argue that Plaintiff has not pled facts to support municipal liability under *Monell*.  (*See* Defs.' Mem. 19–24; Defs.' Supp. Mem. 11–15; Defs.' Reply 12–

---

[9] Plaintiff also references search and seizure, assault and battery, trespass upon his person, and conversion of his property in connection with his First Claim for Relief, which generally summarizes his Section 1983 claim.  (*See* Am. Compl. ¶ 120.)  However, Plaintiff does not assert specific allegations under any of these potential claims in the Amended Complaint, nor does Plaintiff reference them in his opposition to Defendants' motion to dismiss the Amended Complaint.  Aside from his references to search and seizure and trespass, which I deem to be incorporated under his claims stating a general violation of his constitutional rights during the alleged false arrests, I find that the potential claims, to the extent they have been properly raised, have been abandoned.  In any event, any claim for "assault and battery" has been effectively dropped considering Plaintiff's removal of his excessive force claim.  In addition, Plaintiff does not plead any facts supporting a conversion of his property.

[10] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on April 5, 2016.  (Doc. 56.)

[11] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on August 10, 2016.  (Doc. 73.)

13

15.)  I address these arguments in turn.

### A.  *Attachments to the Amended Complaint and Judicial Notice*

As an exhibit to his Amended Complaint, Plaintiff attached a video of his November 27, 2011 arrest, which he relied on in the Amended Complaint.  (Am. Compl. Ex. A, ¶¶ 115–17.) Defendants do not object to my consideration of the video, and indeed, rely on the "incorporated video" in support of their own arguments.  (Defs.' Supp. Mem. 2–3, 7–8, 10–11; Defs.' Reply 4–6.)  Therefore, I consider the video as part of Plaintiff's Amended Complaint.  *See Kass*, 864 F.3d at 206.

Additionally, in moving to dismiss, Defendants attached certificates of disposition related to Plaintiff's arrests, as well as an official court reporter's transcript of state court proceedings addressing the criminal charges.  I find that I may properly consider the certificates of disposition and state court transcript in connection with Defendants' motion to dismiss.  *See Jones*, 2015 WL 8362766, at *3 (taking judicial notice of certificate of disposition); *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (taking judicial notice of administrative hearing transcript).

### B.  *Impact of Plaintiff's Guilty Plea*

As a preliminary matter, Defendants—citing Plaintiff's agreement to withdraw his "not guilty" pleas for the Remaining Charges and dispose of the Remaining Charges as part of a plea bargain in which he pled guilty to one count of resisting arrest in connection with the September 24 charge—argue that "Plaintiff's guilty plea forecloses any claims related to his [Remaining Charges], just as certainly as it foreclosed claims from . . . [the] September 24, 2011 arrest." (Defs.' Supp. Mem. 1–2, 3; *see also* Defs.' Mem. 5 ("[P]laintiff's guilty plea for these four arrests, which were consolidated under one docket number . . . leads to the inference that the

arrests were in fact privileged.").)[12]  As a general rule, "[w]here the civil rights plaintiff has been convicted of the offense for which he was arrested, [the Second Circuit has] in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest."  *Cameron v. Fogarty*, 806 F.2d 380, 388 (2d Cir. 1986).  Defendants, however, have not cited any case law where this rule has been applied to foreclose a Section 1983 claim based on charges that—although covered by a guilty plea to another charge—did not arise out of the same events and arrest that led to the charge to which the civil rights plaintiff pled guilty.  Put simply, the logical foundation of such a rule does not easily apply to charges that were merely disposed of as part of that same plea bargain but otherwise bear no relation to the particular events and arrest for which the civil rights plaintiff pled guilty.[13]

Certainly, the treatment of guilty pleas in state court proceedings may provide a glimmer of support for the conclusion that the rule stated in *Cameron* should be applied to Plaintiff.  For example, in discussing the impact of a guilty plea on charges that are either dismissed under or

---

[12] Plaintiff vigorously disputes what he deems to be Defendants' characterization of the plea bargain as Plaintiff pleading guilty to all four charges, and as part of his argument, devotes multiple pages to addressing the requirements for a valid plea allocution.  (*See* Pl.'s Opp. 7–11.)  However, although Defendants were admittedly careless with the language used to describe the plea bargain—even referring, in their original brief, to his "guilty plea for these four arrests," (Defs.' Mem. 5)—I do not read Defendants' argument as stating that Plaintiff pled guilty to each charge from each arrest, nor can they make such an argument based on the papers submitted.

[13] Although Defendants cite to a case in this district purportedly supporting the conclusion that a guilty plea to a consolidated action extends across all charges and bars a Section 1983 action premised on any of the consolidated charges, Defendants' argument in reliance on this case is misplaced.  (*See* Defs.' Supp. Mem. 4.)  In that case, *Flemming v. New York*, No. 06 Civ. 15226(RJH)(HBP), 2009 WL 6325520 (S.D.N.Y. Aug. 10, 2009), the plaintiff, Flemming, was arrested and charged with numerous crimes in connection with his participation in a fraudulent scheme.  *Id.* at *1.  After his arrest, Flemming was indicted on charges by two grand juries, both of which included larceny counts arising out of the alleged fraud.  *Id.*  The two indictments were consolidated and, because the second indictment was still outstanding after being consolidated with the first, the trial court dismissed the second indictment to eliminate the redundant charges that were now included as part of the first indictment.  *Id.*  Flemming then pled guilty to one count of second degree larceny in full satisfaction of the consolidated charges against him.  *Id.* at *2.  Among the many arguments made by Flemming was that the court had dismissed the charge to which he pled guilty, which the court found erroneous based on the record.  *Id.* at *20.  Because the procedural and factual posture of this case is materially different from the circumstances and facts in *Flemming*, I find *Flemming* to be inapposite.

deemed covered by that plea, the New York Court of Appeals explained that a defendant cannot be retried unless the entire plea arrangement is vacated. *See People v. Rice*, 250 N.E.2d 721, 722 (N.Y. 1969). Furthermore, a defendant who does accept a plea bargain "forfeits the right to challenge the factual basis for the plea and is, accordingly, precluded from subsequently challenging the merits of charges which were dismissed in the course of plea-bargaining negotiations." *People v. Morelli*, 644 N.Y.S.2d 574, 575 (3d Dep't 1996) (refusing to allow the defendant to withdraw his plea to an assault charge when he discovered new facts related to the arson charge that was dismissed alongside his guilty plea). Taking the legal consequences of a plea bargain along with the fact that Plaintiff here had to withdraw his "not guilty" pleas in order to enter his plea bargain, there is at least a logical basis, if the *Cameron* rule is applied, to infer the lawfulness of Plaintiff's arrests leading to the Remaining Charges.

However, the impact that consolidation of various criminal cases has on a defendant's and prosecutor's ability to make use of the dismissed charges in the criminal context does not lead to the inescapable conclusion that the consolidation process will have some preclusive effect in a civil case. Absent case law to the contrary and even considering the finality otherwise granted to plea bargains, I do not find that a civil rights plaintiff concedes the lawfulness of an arrest where, as here, his guilty plea was to an entirely different charge stemming from entirely different events that occurred on different dates from the date of the offense to which the plaintiff pled guilty.[14] Although, as Defendants note, courts have applied the *Cameron* rule even when a civil rights plaintiff pled guilty to a lesser charge, these cases differ in a critical and material way from the circumstances presented here: the charges in each of those cases still involved the same

---

[14] This finding does not address what the legal ramifications would be if discovery demonstrates that the prosecution and Vincent agreed that the People would accept Vincent's guilty plea in satisfaction of the Remaining Charges and Vincent's agreement not to pursue civil claims related to the Remaining Charges.

underlying arrest. *See Jones*, 2015 WL 8362766, at *4 (holding that pleading guilty to lesser-included offenses to resolve all charges stemming from single allegedly false arrest conceded probable cause for all charges governed by plea agreement); *Smith*, 2013 WL 6158485, at *3 (plaintiff pled guilty to one charge in satisfaction of all charges that were related to the same arrest); *Hope v. City of N.Y.*, No. CV-08-5022 (BMC), 2010 WL 331678, at *1 (E.D.N.Y. Jan. 22, 2010) ("Because [the plaintiff's] arrest, indictment, prosecution, and conviction [by guilty plea] for disorderly conduct all arose out of the same incident, the . . . § 1983 action would necessarily impugn his criminal conviction . . . ."); *Roundtree v. City of N.Y.*, 778 F. Supp. 614, 619 (E.D.N.Y. 1991). My decision accords with the "more logical approach"—identified in a different context in a case cited by Defendants—"to consider as a total transaction whether the activity forming the basis for the arrest is the same as the activity to which the defendant pleaded guilty." *Hope*, 2010 WL 331678, at *2 n.4.

Nothing in the Amended Complaint, certificates of disposition, or transcript indicates that Plaintiff's agreement to consolidate the Remaining Charges with the September 24 charge and deem them covered by his guilty plea amounted to an admission of guilt with respect to the underlying conduct related to the Remaining Charges. In addition, Defendants have not cited any case law holding that a guilty plea that covers or is taken in satisfaction of unrelated charges implies the lawfulness of those underlying unrelated arrests. Therefore, I deny Defendants' motion to dismiss the Remaining Charges as barred by the plea bargain.[15]

---

[15] Separately, Defendants argue that Plaintiff's Section 1983 claims related to his Remaining Charges are barred by the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that when considering a Section 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. For the reasons just stated, I do not find that *Heck* applies to bar Plaintiff's claims.

## C. *False Arrest*

A Section 1983 claim for false arrest that is alleged to have occurred in New York is "substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under federal and state law, a plaintiff bringing a false arrest claim must demonstrate that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the enforcement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted).

In determining whether an arrest was privileged, courts essentially decide whether there was legal justification for the challenged arrest, or "in most cases, whether there was probable cause." *Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *5 (S.D.N.Y. Mar. 7, 2016) ("*Marom I*"), *on reconsideration in part*, 2016 WL 5900217 (S.D.N.Y. July 29, 2016) ("*Marom II*"). Because of the presumption that a warrantless arrest is unlawful, plaintiffs are not required to allege a lack of probable cause when stating a false arrest claim based on such an arrest. *See Broughton v. State*, 37 N.Y.2d 451, 458 (1975); *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007). Plaintiff here alleges that he was arrested without a warrant on each of his four arrests and, therefore, he sufficiently pleads that the arrests were not privileged.

However, probable cause to arrest may still arise as a "complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Id.* "[A]n officer 'has probable cause to arrest when he or she has knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Garcia*, 779 F.3d at 92 (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)).

Additionally, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Id.* (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)).[16] "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Zalaski*, 723 F.3d at 390); *see also Basinski v. City of N.Y.*, 192 F. Supp. 3d 360, 365 (S.D.N.Y. 2016).

Here, Defendants argue that Plaintiff's false arrest claims all fail because there was probable cause to effectuate the arrests. However, the facts as alleged in Plaintiff's Amended Complaint do not demonstrate either probable cause or arguable probable cause with respect to any of the four arrests.

### 1. The October 15 Arrest

In connection with the October 15 arrest, Plaintiff specifically alleges that he was encouraged by the police officers in his efforts to keep the protesters together while Plaintiff communicated with the protest leader on the other side of the street. (Am. Compl. ¶¶ 66–69.) Plaintiff was arrested for disorderly conduct in violation of New York Penal Law § 240.20(5) and (6). (*Id.* ¶ 70.) Although Plaintiff does not state whether the arresting officer, Defendant

---

[16] Although Plaintiff suggests otherwise, (Pl.'s Opp. 33–34), the Second Circuit has noted that "qualified immunity can . . . be established at the pleading stage . . . . The Supreme Court has made clear that qualified immunity *can* be established by the facts alleged in a complaint." *Garcia*, 779 F.3d at 97.

Curley, was aware of Plaintiff's communications with the other NYPD officers, in viewing the Amended Complaint favorably to Plaintiff, I presume that Curley should have been aware of those exchanges. These facts render Plaintiff's claims different from *Garcia*, where the Second Circuit, in deciding that the officers had probable cause to arrest, specifically emphasized that the plaintiff had only expressed a belief in "implied permission" to violate traffic laws and that "no official had expressly authorized the protesters" to engage in the alleged unlawful behavior. *Garcia*, 779 F.3d at 93. Indeed, the Second Circuit even distinguished a Supreme Court case cited by the plaintiff for that same reason. *See id.* at 95 (citing *Cox v. Louisiana*, 379 U.S. 559 (1965), and explaining that in *Cox*, the police officials had given explicit permission to conduct the demonstration in a particular location). Therefore, based on the pleadings, Curley did not have arguable probable cause to arrest Plaintiff.

### 2. The October 26 Arrest

With respect to the October 26 arrest, Plaintiff claims he was on the sidewalk on Reade Street just west of Broadway when, without issuing a dispersal order, NYPD officers pulled him from the sidewalk where he was present along with other protesters. (Am. Compl. ¶¶ 82–84.) These allegations conflict with those in the criminal complaint which allege, in part, that Plaintiff was part of a group of fifty people locking arms in the street blocking traffic. Taking Plaintiff's version of the events as accurate, as I must, Plaintiff alleges no facts that would raise an inference of arguable probable cause to arrest him. *See Marom I*, 2016 WL 916424, at *5 ("Given the lack of factual content alleged in the [Amended Complaint], it is impossible for the Court to determine, as a matter of law, that there was probable cause to arrest. This also precludes the Court from being able to determine, at this stage, whether defendants are protected from liability by the doctrine of qualified immunity.").

### 3. The November 8 Arrest

In connection with the November 8 arrest, Plaintiff alleges facts describing a verbal exchange he had with police officers after he obeyed orders to move back into Zuccotti Park and stand behind a barrier while officers investigated a "suspicious package somewhere north of Zuccotti Park." (Am. Compl. ¶¶ 94–96.) Since the suspicious package was in the opposite direction of where Plaintiff had been heading when stopped by the NYPD, he asked an officer if he could continue south, and was given the same instruction to move behind the barrier. (*Id.* ¶¶ 95–96.) When Plaintiff responded that he was already behind the barrier, he was arrested for obstruction of governmental administration and disorderly conduct, in violation of New York Penal Law § 195.05 and § 240.20(6), respectively. (*Id.* ¶¶ 97–98.)

However, Plaintiff does not allege any facts supporting a reasonable conclusion that he was "congregat[ing] with other persons in a public place" and alleges that he complied with the order to relocate, negating any inference of arguable probable cause to arrest for disorderly conduct on November 8. *See* N.Y. Penal Law § 240.20(6) ("A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."); *see also Holmes v. City of N.Y.*, No. 14 CV 5253-LTS, 2016 WL 915332, at *3 (S.D.N.Y. Mar. 4, 2016) (finding that allegations that the plaintiff was told individually to leave a roadway did not demonstrate a disorderly conduct violation), *reconsideration denied*, 2017 WL 519250 (S.D.N.Y. Feb. 8, 2017). Furthermore, because Plaintiff only alleges a verbal exchange with the police officers, the Amended Complaint does not establish arguable probable cause to arrest him for obstruction of justice. *See* N.Y. Penal Law § 195.05 ("A person is guilty of obstructing governmental administration

when he intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."); *see also Uzoukwu v. City of N.Y.*, 805 F.3d 409, 414–15 (2d Cir. 2015) (explaining that purely verbal interference is insufficient under this provision); *Holmes*, 2016 WL 915332, at *4 (holding that even though the plaintiff did not immediately leave the runway, the failure to vacate the runaway, for reasons already explained, was not an "independently unlawful act").

### 4. November 27 Arrest

With respect to the November 27 arrest, the parties offer conflicting accounts of the events leading to Plaintiff's arrest, including conflicting interpretations of what transpired on the video of the arrest. From a review of the video, it is unclear exactly what transpired in the interaction between the officers and Plaintiff. Whatever the interpretation, unlike the video submitted in the *Basinski* case cited by Defendants, the video does not clearly demonstrate that Plaintiff was "vociferously argumentative" or interjected himself into interactions with third parties in a "seemingly provocative manner," nor is it clear from the video that Plaintiff was making the officers "uncomfortable" or "nervous," let alone that the officers made that known to Plaintiff. *See Basinski*, 192 F. Supp. 3d at 366 (plaintiff arrested for obstruction of governmental administration and disorderly conduct). Nor is it clear from the video that Plaintiff was resisting arrest as also charged on November 27. As a result, I do not find that the alleged facts at this stage allow me to infer that Cabrera and Manning had arguable probable cause to arrest Plaintiff. *See Hyman*, 630 F. App'x at 42 (affirming denial of motion to dismiss where video footage was unclear, details of the incident based on the video were difficult to discern, and "testimonial interpretation" of video was necessary).

Accordingly, Defendants' motion to dismiss Plaintiff's false arrest claims is denied, subject to my discussion regarding the personal involvement of Defendants *infra*.

**D.** *Malicious Prosecution*

To state a malicious prosecution claim under Section 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) the proceedings were begun with malice; and (4) the matter terminated in plaintiff's favor. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003); *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). In actions brought under Section 1983, a plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

I find that Plaintiff has not stated a claim for malicious prosecution in connection with the October 15, November 8, and November 27 charges because he has not and cannot allege that the prosecutions terminated in his favor. Rather, Plaintiff alleges only that those charges were "dismissed" on October 10, 2012. (Am. Compl. ¶¶ 76, 107, 118.) As noted above, the certificates of disposition and the transcript of the October 10, 2012 proceeding in which those charges were dismissed demonstrate that these charges were consolidated along with a September 24 charge and then deemed covered under Plaintiff's guilty plea to that charge. (*See* Lucas Supp. Decl. Exs. B, C.) Plaintiff explicitly withdrew his not guilty plea with regard to the offenses charged on October 15, November 8, and November 27. These circumstances do not show that the prosecutions "terminated in plaintiff's favor." *See Murphy v. Lynn*, 118 F.3d 939, 948 (2d Cir. 1997) ("Where the prosecution did not result in an acquittal, it is deemed to have

ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.").  As a result, Plaintiff's malicious prosecution claims related to the October 15, November 8, and November 27 charges are dismissed.

With respect to the October 26 charge, Defendants move to dismiss Plaintiff's malicious prosecution claim for two reasons:  first, they argue that there was probable cause; and second, they argue that Plaintiff has not pled a sufficient post-arraignment liberty restraint.  (*See* Defs.' Supp. Mem. 6–7.)[17]  For the reasons stated above in connection with the false arrest claim, I find that Plaintiff's allegations do not support the existence of arguable probable cause.

With respect to whether Plaintiff adequately pled a post-arraignment liberty restraint, the Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (internal quotation marks omitted).  While "[t]he Second Circuit has not provided a bright-line rule to establish when court appearances alone suffice to establish a Fourth Amendment liberty deprivation," the Second Circuit "has, however, held that two court appearances do not suffice, but that eight court appearances combined with a ban on out-of-state travel would."  *Holmes*, 2016 WL 915332, at *5 (citations omitted).  Although notably imprecise and not directly tied to any one of his six arrests, Plaintiff alleges that he made fifteen court appearances, at least ten of which occurred after his October 26 arrest and therefore could plausibly be attributed to that arrest.[18]  (*See* Am. Compl. ¶ 61.)  As such, Plaintiff has alleged facts in connection with his October 26 charge sufficient to move past the pleading stage.

---

[17] Defendants additionally raise, for the first time in reply, that there was no favorable termination in connection with the October 26 arrest.  (Defs.' Reply 9.)  I decline to consider an argument raised for the first time in reply.

[18] It is not clear why Plaintiff did not identify a specific number of court appearances to any particular arrest rather

For the foregoing reasons, Defendants' motion to dismiss the malicious prosecution claims is granted in part and denied in part, subject to my discussion regarding the personal involvement of Defendants *infra*.

### E.    *Fair Trial Rights*

 "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Canario v. City of N.Y.*, No. 05 Civ. 9343(LBS), 2006 WL 2015651, at *2 (S.D.N.Y. July 12, 2006). Although a plaintiff must have been "charged with a violation or crime" to bring this claim, "[a] plaintiff need not have proceeded to a full trial on the merits." *Caravalho v. City of N.Y.*, No. 13-cv-4174 (PKC)(MHD), 2016 WL 1274575, at *1 (S.D.N.Y. Mar. 31, 2016) ("*Caravalho I*") (citations omitted) (currently on appeal), *reconsideration denied,* No. 13-cv-4174 (PKC)(MHD), 2016 WL 4154273 (S.D.N.Y. July 29, 2016) ("*Caravalho II*").  Additionally, while a plaintiff must also have suffered a deprivation of liberty as a result of the false information, "[t]he imposition of charges based on an allegedly false accusatory instrument satisfies, at the motion to dismiss stage, the requirement that false statements forwarded to a prosecutor cause a deprivation of liberty." *Caravalho II*, 2016 WL 4154273, at *1–2 (internal quotation marks omitted).

As Plaintiff states, "the gravamen of [his] claims is that with regard to each arrest, the Defendants made false statements concerning the Plaintiff's conduct in their sworn criminal complaints, which then formed the basis of the Plaintiff's prosecution."  (Pl.'s Opp. 29.)  In

---

than providing an aggregate number for all arrests at issue.  However, if discovery reveals that Plaintiff made only two or fewer appearances in connection with his October 26 arrest, Plaintiff's malicious prosecution claim related to that arrest will likely not survive a summary judgment motion.

moving to dismiss, Defendants argue that the Amended Complaint (1) does not specify how the criminal complaints were false, and (2) does not plead facts sufficient to create an inference that the criminal complaints were "likely to influence a jury's decision." (Defs.' Mem. 24–25; Defs.' Supp. Mem. 8–10.)

With respect to falsity, unlike the cases cited by Defendants, Plaintiff specifically, albeit at times in a convoluted fashion, alleges what the false statements were and how they were false, and makes factual allegations that contradict certain of the statements in the criminal complaints. (*Compare* Am. Compl. ¶¶ 74–75, 88–91, 100–05, 113–15), *with Pesola v. City of N.Y.*, No. 15-CV-1917 (PKC)(SN), 2016 WL 1267797, at *11 (S.D.N.Y. Mar. 30, 2016) (fair trial claim based only on "broad and conclusory allegations that officers 'filed false reports'" without asserting "how, in what way, or to what effect" the reports were falsified), *and Abdul-Rahman v. City of N.Y.*, No. 10 Civ. 2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar. 30, 2012) (plaintiff only included general allegations that the officers provided false statements that the plaintiff committed various crimes)). Given that Plaintiff alleges that the charging officers placed false statements in criminal complaints, I also find that Plaintiff has alleged sufficient facts to support an inference that the allegedly false information would be reasonably likely to influence a jury. *See Marom II*, 2016 WL 5900217, at * 2–3 (stating that standard is whether the content of the information was material and, if admitted through the testimony of the affiants, likely to influence a jury's decision). Specifically, in connection with the October 15 arrest, Plaintiff alleges that Curley stated in a criminal complaint that Plaintiff entered the street repeatedly in violation of an order, when no such order was given. (Am. Compl. ¶¶ 68–69, 73–75.) In connection with the October 26 arrest, Plaintiff alleges that Waring and McNamara stated in a criminal complaint and deposition that Plaintiff was part of a group of individuals locking arms

in the street thereby blocking traffic.  (*Id.* ¶¶ 88–90.)  However, Plaintiff claims he was on the sidewalk at all times and did not interlock arms with anyone.  (*Id.* ¶ 91.)  In connection with the November 8 arrest, Plaintiff alleges that Grodnick and Traynor stated in a criminal complaint that they asked Plaintiff to move from his location four times and he refused, but Plaintiff asserts he complied with the order to move.  (*Id.* ¶¶ 94–97, 100–05.)  With regard to the November 27 arrest, Plaintiff alleges that Manning stated in a criminal complaint that Plaintiff "repeatedly" stepped between the arresting officer and another arrested individual, but Plaintiff claims he was approximately fifteen feet away from the arrest and did not repeatedly step in between the officers and the other individual.  (*Id.* ¶¶ 113–15.)

Although facts may later emerge to cast doubt on these claims, Defendants' motion to dismiss Plaintiff's fair trial rights claims is denied, subject to my discussion regarding the personal involvement of Defendants *infra*.

### F.  *Abuse of Process*

To state a claim for malicious abuse of process, a plaintiff must plausibly allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  To establish that the defendant issued legal process "in order to obtain a collateral objective that is outside the legitimate ends of the process," it is not enough for a plaintiff to establish a malicious motive; rather, a plaintiff must show an "improper *purpose* in instigating the action."  *Savino*, 331 F.3d at 77.  Moreover, "[t]he pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim."  *De Santis v. City of N.Y.*, No. 10 Civ. 3508(NRB), 2011 WL 4005331, at *8 (S.D.N.Y.

Aug. 29, 2011) (quoting *Lopez v. City of N.Y.*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995)).

Defendants' first argument, that the existence of probable cause defeats the abuse of process claims, must be rejected based upon my earlier finding that Plaintiff's allegations do not establish arguable probable cause for the arrests at issue. However, Defendants offer two other arguments in support of dismissal: (1) that Plaintiff has not alleged a collateral objective; and (2) that Plaintiff has not alleged the pursuit of any collateral objective occurring after process was issued. Plaintiff rests his abuse of process claim for each of the state charges on the filing of a false criminal complaint or affidavit. (*See* Pl.'s Opp. 32.) Plaintiff further argues that the "number of arrests, combined with the manner in which they were prosecuted, achieved an unlawful collateral purpose of forcing the Plaintiff to cease participation in Occupy Wall Street." (*Id.*) However, beyond his own conclusory assertion, Plaintiff does not cite any facts demonstrating that the criminal complaints were crafted to get him to stop participating in OWS demonstrations. *See Marom I*, 2016 WL 916424, at *8 (conspiracy to falsify arresting documents permitted an inference that defendants intended to do harm to plaintiffs, but was insufficient to sustain a claim for abuse of process). Moreover, Plaintiff's claim that he stopped participating in OWS demonstrations is not proof that this was Defendants' objective.

As a result, Defendants' motion to dismiss Plaintiff's abuse of process claims is granted.

### G.   *First Amendment Retaliation*

To state a First Amendment retaliation claim, a private citizen must show "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Gersbacher v. City of N.Y.*, 134 F. Supp. 3d 711, 722 (S.D.N.Y. 2015) (quoting *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010)); *see also*

*Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam). Notwithstanding Defendants' arguments to the contrary, Plaintiff has successfully pled all three elements. As an initial matter, by participating in the OWS protests, Plaintiff engaged in "what can reasonably be described as political speech in its purest form." *Gersbacher*, 134 F. Supp. 3d at 723 (internal quotation marks omitted). Additionally, Plaintiff clearly alleges that Defendants "arrested him due to his participation in the [OWS protests]," and also "alleged that the . . . injury he suffered due to [his arrests]" led him to abandon his efforts to support OWS and all political involvement. *Id.* (*See* Am. Compl. ¶¶ 55, 143.)

As a result, Defendants' motion to dismiss Plaintiff's First Amendment claim is denied.

### H.    *Personal Involvement*

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages [against individual defendants] under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). A plaintiff may also demonstrate the personal involvement of a supervisor by alleging facts showing that:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

It is also "widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)

(quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "An officer who fails to intercede in [a] constitutional violation is liable for the preventable harm caused by the actions of other officers. Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Id.* (quoting *Anderson*, 17 F.3d at 557).

Defendants appear to argue that (1) in connection with his false arrest claim, Plaintiff failed to plead the personal involvement of any of the NYPD Defendants with respect to the October 26 arrest, (Defs.' Mem. 7–8), (2) in connection with the deprivation of fair trial rights claim, Plaintiff similarly failed to plead the personal involvement of Winski, Blanco, Bloomberg, Kelly, Waring, Grodnick, or Manning, (Defs.' Supp. Mem. 9 n.8, 10; Defs.' Reply 10–11), and (3) Plaintiff failed to plead a failure to intervene as to Defendant Winski with respect to the November 27 arrest, (Defs.' Mem. 18–19; Defs.' Supp. Mem. 10–11; Defs.' Reply 6–7).[19]

With respect to the false arrest claims generally, the Amended Complaint alleges the personal involvement only with regard to (1) Defendant Curley in the October 15, 2011 arrest, (Am. Compl. ¶¶ 62, 71); (2) Defendants Waring and McNamara in the October 26, 2011 arrest, (*id.* ¶¶ 77, 86); (3) Defendants Grodnick and Traynor in the November 8, 2011 arrest, (*id.* ¶¶ 98–99); and (4) Defendants Manning and Winski in the November 27, 2011 arrest, (*id.* ¶¶ 111–12, 116–17). To the extent that Plaintiff is attempting to allege a false arrest claim against Defendants who were not personally involved in a given arrest, Plaintiff has failed to state a

---

[19] Defendants also point out that Plaintiff did not include any allegations against Edward Blanco, Wilson Vernelly, Carbajal, and Paul Reres in the Amended Complaint. (Defs.' Supp. Mem. 1 n.1.) Defendants are correct. Indeed, Plaintiff did not even include Defendants Vernelly, Carbajal, or Reres in the case caption in his Amended Complaint, indicating Plaintiff's intent to withdraw any claims against those Defendants. Although Plaintiff does reference Defendant Blanco in his Amended Complaint, he does not allege any facts related to Defendant Blanco. (*See* Am. Compl. ¶¶ 20, 120.) As a result, I dismiss all claims against Defendants Blanco, Vernelly, Carbajal, and Reres.

claim against those Defendants with respect to arrests in which they were not personally involved.

In arguing that Plaintiff fails to plead the personal involvement of Winski, Blanco, Bloomberg, Kelly, Waring, Grodnick, or Manning in the deprivations of his fair trial rights, Defendants make two arguments. First, Defendants note that the Amended Complaint does not plead a claim for denial of Plaintiff's fair trial rights against Defendants Winski, Blanco, Cabrera, Bloomberg, and Kelly. (*See* Defs.' Supp. Mem. 9 n.8; Defs.' Reply 11.) Defendants are correct; Plaintiff's Fourth Claim for Relief for denial of his fair trial rights lists only Defendants Curley, Waring, McNamara, Grodnick, Traynor, and Manning, (Am. Compl. ¶¶ 136–39),[20] and the Amended Complaint contains no allegations regarding the involvement of Defendants Bloomberg, Kelly, Blanco, or Winski in providing any alleged false statements.[21] Therefore, I do not construe the Amended Complaint to allege a claim for denial of Plaintiff's fair trial rights against Defendants Bloomberg, Kelly, Blanco, or Winski. Like the allegations regarding false arrests, the Amended Complaint alleges the personal involvement in submitting false statements only of (1) Defendant Curley with respect to the October 15, 2011 arrest, (*id.* ¶¶ 72–75); (2) Defendants Waring and McNamara with respect to the October 26, 2011 arrest, (*id.*

---

[20] I also note that Plaintiff's Sixth Claim for Relief for malicious prosecution lists only Defendants Curley, Waring, McNamara, Grodnick, Traynor, and Manning. (Am. Compl. ¶ 146.) It does not specifically list Defendants Winski, Blanco, Bloomberg, or Kelly. (*Id.*) As such, I do not construe the Amended Complaint to allege a claim for malicious prosecution against Defendants Winski, Blanco, Bloomberg, or Kelly. As discussed above, only Plaintiff's malicious prosecution claim with respect to the October 26, 2011 charge survives. Plaintiff only alleges the personal involvement of Defendants Waring and McNamara in the October 26, 2011 arrest and charge. (*Id.* ¶¶ 77–93.) To the extent that Plaintiff is attempting to allege a malicious prosecution claim against Defendants who were not personally involved in the October 26, 2011 arrest or charge, Plaintiff has failed to state a claim against those Defendants.

[21] To the extent that Plaintiff's Amended Complaint can be read to include claims against Defendants Bloomberg and Kelly personally in their capacity as supervisors, given Plaintiff's allegation that they were generally responsible for overseeing NYPD matters, and for making or otherwise ratifying the decisions leading to the alleged policies, (*see* Am. Compl. ¶¶ 16–17, 154, 220, 256), Plaintiff still fails to allege facts supporting the imposition of supervisory liability for many of the reasons stated in connection with my discussion of Plaintiff's *Monell* claims, *infra*. *See Colon*, 58 F.3d at 873.

¶¶ 88–92); (3) Defendants Grodnick and Traynor with respect to the November 8, 2011 arrest,

(*id.* ¶¶ 100–06); and (4) Defendant Manning with respect to the November 27, 2011 arrest, (*id.*

¶¶ 113–15).  To the extent that Plaintiff is attempting to allege a deprivation of fair trial rights

claim against Defendants who were not personally involved in a given arrest and charge,

Plaintiff has failed to state a claim against those Defendants with respect to arrests and charges in

which they were not personally involved

Defendants' second argument is that because Defendants Waring, Grodnick, and

Manning clearly state that any information they received was relayed to them by other officers,

Plaintiff has not claimed that these officers "created" any false evidence and therefore fails to

allege their personal involvement.  (*See* Defs.' Supp. Mem. 10; Defs.' Reply 11.)  However, the

Amended Complaint clearly states that defendants Waring, Grodnick, and Manning each

submitted false statements in a criminal complaint, (Am. Compl. ¶¶ 88, 92, 100, 101, 106, 113–

14), and, since I must accept as true the allegations in the Amended Complaint, I deny

Defendants' motion to dismiss Plaintiff's fair trial rights claims against defendants Waring,

Grodnick, and Manning based on lack of personal involvement.

Finally, with respect to Defendants' argument that Plaintiff failed to plead that Defendant

Winski failed to intervene, I find that Plaintiff has adequately pled that Defendant Winski had the

opportunity to intervene in Plaintiff's November 27 arrest and, therefore, I deny Defendants'

motion to dismiss Defendant Winski as it relates to claims resulting from that arrest.

## I.    *Municipal Liability*

The Supreme Court has held that a municipality may be liable for Section 1983 violations

if the plaintiff's injury is the result of municipal policy, custom, or practice.  *See Monell*, 436

U.S. at 694.  At the pleading stage, a plaintiff "must give a factual description of such a policy,

not just bald allegations that such a thing existed." *Bess v. City of N.Y.*, 11 Civ. 7604(TPG), 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). As such, in order to properly state a claim for municipal liability a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted).

> A plaintiff may satisfy the policy or custom requirement by alleging (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 538–39 (S.D.N.Y. 2015) (internal quotation marks omitted). Even if a plaintiff satisfies the "policy or custom" requirement, a plaintiff must still "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404.

Plaintiff alleges three policies or practices in support of municipal liability, and alleges that each of his arrests can be attributed to at least one of those policies. (Am. Compl. ¶¶ 150–267.)

### 1. Failure to Train

First, Plaintiff alleges a failure to train officers with respect to the rights of protesters and the interplay of small offenses with the protesters' constitutional rights, and "proper policing of expressive speech activity protected by the First Amendment." (*Id.* ¶¶ 150–71.) Plaintiff claims that this failure, along with the other policies, contributed to the October 15, October 26, and November 27 arrests. (*Id.* ¶¶ 263–66.)

Municipal liability is at its "most tenuous" when it rests on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, to subject a municipality to liability for a failure to train, a plaintiff "must show that a municipality's failure to train its employees amounted to 'deliberate indifference.'" *Marom I*, 2016 WL 916424, at *22 (quoting *Connick*, 563 U.S. at 61). This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Brown*, 520 U.S. at 410). Under this rubric, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizen's constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* In this vein, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Brown*, 520 U.S. at 409). Ultimately, to establish deliberate indifference, a plaintiff must show: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992).

Here, Plaintiff adequately states that the City knew there would be large-scale protests by individuals. (*See* Am. Compl. ¶¶ 151–53.) However, Plaintiff fails to plausibly allege the existence of a history of the NYPD mishandling the arrests of protesters that is caused by an inadequate understanding of the interplay between small offenses and protesters' constitutional rights, or that the wrong choice will frequently cause a deprivation of that constitutional right.

Plaintiff does state that officers are not trained in handling First Amendment activity except during Police Academy training and outlines the legal principles that should have been part of such a training. (*Id.* ¶¶ 155, 157, 159.) However, the only facts that Plaintiff identifies in support of any pattern of mishandling situations because of a failure to train related to this issue consists of other litigations resulting in settlements that involved the arrests of protesters, including at the 2004 Republican National Convention, the "extensive arrests" during OWS, and the "exceptionally high rate at which arrests were voided, declined for prosecution, or dismissed." (*Id.* ¶¶ 164–65, 168.) With respect to the historical references to previously settled lawsuits, Plaintiff does not allege any facts that the lawsuits involved constitutional abuses or that any abuses were caused by a failure to train officers in the proper handling of First Amendment activity. (*See id.* ¶¶ 164–65.) Moreover, the mere fact that a case settled is not probative of liability unless there was a concession of liability. *Marom I*, 2016 WL 916424, at *22 (dismissing failure to train claim based on similar allegations where plaintiff failed to allege that any of the referenced lawsuits resulted in findings of liability); *Arbuckle v. City of N.Y.*, No. 14 Civ. 10248 (ER), 2016 WL 5793741, at *17 (S.D.N.Y. Sept. 30, 2016) (same). Similarly, Plaintiff's conclusion regarding the "exceptionally high rate" at which OWS arrests were "voided, declined for prosecution, or dismissed" does not (1) describe anything about the underlying arrests, (2) identify any constitutional violations, or (3) connect purported constitutional violations to the stated failure to train. (*See* Am. Compl. ¶ 168.) Accordingly, Defendants' motion to dismiss Plaintiff's first *Monell* claim is granted. *See Marom I*, 2016 WL 916424, at *22 (allegations regarding the 2004 RNC protests and other Section 1983 lawsuits insufficient to support a failure to train on the legal duty to avoid violating a citizen's rights, namely by using excessive force and making false or retaliatory arrests during mass protests);

*Pluma v. City of N.Y.*, No. 13 Civ.2017(LAP), 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (allegations of a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations through their deployment of pepper spray").

### 2. Tracking and Monitoring of First Amendment Groups

Plaintiff's second policy in support of municipal liability is that the City allegedly has a policy of tracking, monitoring, surveilling, and reporting on groups and associated individuals participating in First Amendment activities, and using the information gathered to chill First Amendment expression. (Am. Compl. ¶¶ 150, 172–249.) Plaintiff specifically claims that the "unlawful" tracking of OWS was a policy "instituted, devised, and overseen" by Defendants Bloomberg and Kelly, "acting through the NYPD Intelligence Division & Counter-Terrorism Bureau," and in contravention of the Department of Homeland Security's policies and limitations regarding OWS political speech and other surveillance of First Amendment groups. (*Id.* ¶¶ 220–42.) Plaintiff also claims that the NYPD uses "inappropriate and unlawful" investigation techniques in furtherance of this policy, including the use of infiltrators and cell phone interceptors. (*Id.* ¶ 150.)

Despite his detailed allegations, Plaintiff does not allege any facts supporting the inference that the NYPD engaged in these actions to deter political speech or lawful protest. Indeed, many of Plaintiff's alleged facts are historical citations to NYPD investigative policies with respect to other political groups. (*Id.* ¶¶ 172–88.) With regard to OWS activities in particular, Plaintiff alleges that (1) a number of undercover infiltrators joined the OWS movement, with at least one of those infiltrators even encouraging protesters to break the law, (*id.* ¶¶ 177, 198, 200–19); and (2) the NYPD collected data on OWS, including by receiving

intelligence reports and reviewing photographs of associated individuals, to the effect of officers inexplicably knowing individual's names, (*id.* ¶¶ 189–96, 199). Plaintiff also alleges specific facts supporting a plausible inference of some type of unlawful conduct, namely, the undercover infiltration of a provocative officer in the OWS movement, and a senior FBI agent's general statement as to purportedly unconstitutional activities by the NYPD. (*Id.* ¶¶ 177, 202–17, 239.) However, Plaintiff does not allege any facts supporting the inference that the NYPD's intelligence gathering was to deter the speech of protesters or that the surveillance was part of a widespread policy of surveilling First Amendment groups in violation of their constitutional rights. *See Pluma*, 2015 WL 1623828, at *9 (noting that the plaintiff pointed to no specific policy authorizing the alleged tactics and that the majority of examples cited did not involve such tactics, and thereby holding that the plaintiff did not allege a *Monell* claim).

In any event, even if I were to find that such a policy existed, Plaintiff has not pled facts supporting the required "causal link" between the alleged policy and his arrests. With respect to his October 15 arrest, Plaintiff speculates that because of the "timing" of the arrest and his "leadership" in OWS, the second policy must have been a "motivating factor." (Am. Compl. ¶ 263.) In connection with his October 26 arrest, Plaintiff appears to allege only that because he was arrested numerous times and others engaged in the same conduct were not arrested, he must have been the target of police enforcement given his position as a leader. (*See id.* ¶ 264.) Plaintiff makes similar claims with respect to his November 8 and November 27 arrests. (*See id.* ¶¶ 265–66.) These allegations, without more, consist only of conjecture and do not support a causal link sufficient to state a claim for municipal liability. *See Brown*, 520 U.S. at 404 ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of

federal rights.").

As a result, Defendants' motion to dismiss Plaintiff's second *Monell* claim is granted.

### 3. Random Arrests to Deter Protests

Finally, Plaintiff alleges a "policy and practice of arresting individuals selected at random from within groups engaging in peaceful protest, for the purpose of frightening and deterring the arrested individual and the remainder of those protesting." (Am. Compl. ¶ 150.) Plaintiff's support, which consists only of journalists reporting apparently random arrests, (*id.* ¶¶ 250–59), is not enough to state a claim under *Monell*. *See Marom I*, 2016 WL 916424, at *22 ("Neither a newspaper report nor an academic paper reporting on incidents that ought to be investigated is a showing of anything entitled to a presumption of truth.").

As a result, Defendants' motion to dismiss Plaintiff's third *Monell* claim is also granted, and the Municipal Defendants are dismissed.

### V.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Specifically, Defendants' motion to dismiss is GRANTED with respect to all Claims for Relief against Defendants Blanco, Vernelly, Carbajal, Reres, Bloomberg, Kelly, and the City of New York. In addition, Defendants' motion to dismiss is GRANTED with respect to: (1) Plaintiff's First Claim for Relief for abuse of process as to Defendants Waring, McNamara, Curley, Grodnick, Manning, Winski, and Traynor (the "Remaining Defendants"); and (2) Plaintiff's Sixth Claim for Relief for malicious prosecution as to the Remaining Defendants with respect to the October 15, November 8, and November 27 charges.

Defendants' motion to dismiss is DENIED with respect to: (1) Plaintiff's Second Claim

for Relief for false arrest as to the Remaining Defendants with respect only to those arrests in which Plaintiff alleged their personal involvement; (2) Plaintiff's Third Claim for Relief for failure to intervene as to Defendant Winski; (3) Plaintiff's Fourth Claim for Relief for denial of his fair trial rights as to the Remaining Defendants with respect only to those arrests and charges in which Plaintiff alleged their personal involvement; (4) Plaintiff's Fifth Claim for Relief for First Amendment retaliation as to the Remaining Defendants; and (5) Plaintiff's Sixth Claim for Relief for malicious prosecution as to Defendants Waring and McNamara with respect to the October 26, 2011 arrest and charge. The Clerk of Court is respectfully directed to terminate the open motion at Document 22.

The parties are directed to meet and confer with regard to a Case Management Plan and Scheduling Order related to discovery concerning the claims that have survived, and jointly file that plan and order on or before April 6, 2018. A template for the order is available at http://nysd.uscourts.gov/judge/Broderick.

SO ORDERED.

Dated:  March 22, 2018
        New York, New York

Vernon S. Broderick
United States District Judge